30

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 8 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| WACKENHUT, INC., CORP., | § | CIVIL ACTION B-96-160 |
| WARDEN TONY PEREZ, | § | |
| ASST. WARDEN RODRIGUEZ, | § | |
| ASST., WARDEN MARMALEJO, | § | |
| MEDICAL DEPARTMENT OFFICIAL, | § | |
| AND UNIT CLASSIFICATIONS OFFICIALS, | § | |
| ET AL | | |
| Defendants | | |

**DEFENDANTS, WACKENHUT CORRECTIONS CORPORATION,
WARDEN TONY PEREZ, ASST. WARDEN RAMON RODRIGUEZ, AND
ASST. WARDEN CHARLES MARMALEJO'S, MOTION TO DISMISS AND/OR
MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Now Come Defendants Wackenhut Corrections Corporation, Warden Tony Perez,

Assistant Warden Ramon Rodriguez and Assistant Warden Charles Marmalejo (hereinafter

referred to as "Wackenhut Defendants") by and through their attorney and file this their

Motion to Dismiss pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted and/or Motion for

Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) with Brief in Support.

In support thereof, the Wackenhut Defendants would show the court as follows:

I.

## SUMMARY JUDGMENT EVIDENCE

The following summary judgment evidence is offered in support of the Wackenhut Defendants' Motion for Summary Judgment:

Exhibit A:    Plaintiff's medical records from June 4, 1996 to February 1997[1];

Exhibit B:    Affidavit of Warden Darryl Anderson; and

Exhibit C:    Affidavit of Assistant Warden Ramon Rodriguez.

II.

## STATEMENT OF THE CASE

Plaintiff, an inmate formerly confined in the Wackenhut Correctional Facility ("Willacy County Unit")[2] in Willacy County, Texas brings this lawsuit *in forma pauperis* pursuant to 42 U.S.C. § 1983 alleging that the Wackenhut Defendants were deliberately indifferent to his serious medical needs when he was reassigned to a bunk in the general population. The Plaintiff also invokes the supplemental jurisdiction of this Court and alleges negligence and intentional infliction of emotional distress. Plaintiff seeks a declaratory judgment that the Defendants' acts, policies, practices, and procedures were in violation of

---

[1] The mental health and dental records for that period have been withheld from Exhibit A.

[2] The Willacy County Unit is under contract with the Texas Department of Criminal Justice to house individuals who have been convicted of felonies and sentenced to prison.

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 2

the Plaintiff's constitutional rights and the law of the State of Texas[3], a permanent injunction,[4] compensatory damages, punitive damages, costs and attorney's fees.

Plaintiff arrived at the Willacy County Unit on June 4, 1996 with a history of epileptic seizures and a history of headaches since a car accident he was involved in on November 1994. Ex. A, p. 33, 34, 36. On June 25, 1996, the Plaintiff was sent to administrative segregation for violating an inmate disciplinary rule.[5]

After 5:00 p.m. on July 4, 1996, the Plaintiff was released from administrative segregation and reassigned to housing in the general population. Ex. C. Due to the Plaintiff's history of epileptic seizures, the medical department restricted him to a lower bunk. Ex. A, p. 36. However, the individual officer who assigned his housing mistakenly assigned him to an upper bunk. At approximately 12:45 a.m., the morning of July 5, 1996, the Plaintiff was found lying on the floor of his cell after possibly having had a seizure and reportedly falling from the top bunk. Ex. A., p. 31. He was immediately taken to Health Services, examined, and kept for observation the rest of the night. Ex. A, p. 29-31.   July

---

[3] The policies and procedures governing the Willacy County Unit were not developed by Wackenhut Corrections Corporation but were developed by the Texas Department of Criminal Justice, Institutional Division ("TDCJ-ID"). Ex. B.

[4] The Plaintiff was confined at the Willacy County Unit from June 1996 to November 1996. In November 1996, Plaintiff was transferred to Dalhart Unit in Dalhart, Texas, which is operated by TDCJ-ID. He is currently confined at a TDCJ-ID Unit in Huntsville, Texas.

[5] Administrative segregation is used as punishment for inmates who have violated an inmate disciplinary rule and who have been found guilty at a disciplinary hearing. The inmate is placed in a cell by himself and confined to his cell for the majority of the day. The inmate is not allowed to interact with other inmates at the Unit during this period of confinement.

4, 1996 was the only night during Plaintiff's confinement at the Willacy County Unit that he was assigned to an upper bunk.  Ex. C.

The physical exam of the Plaintiff revealed no contusions or breaks in the skin.  Ex. A, p. 31.  His vital signs were stable, and he was semi alert but briefly complained of a headache.  Ex. A, p. 31.  He remained in the health clinic until at least 9:30 a.m. and was checked by medical personnel almost every hour.  Ex. A, p. 29-31.  During this period of time, he voiced no further complaints of a headache, rested well throughout the night, and was fully alert and oriented and able to ambulate without any problems after waking from the night's sleep.  Ex. A, p 30-31.

When examined by a doctor on July 5, 1996 at 9:30 a.m., Plaintiff mentioned that he had a backache.  The doctor noted there was a small contusion on his back that was completely resolved no later than July 8, 1996.  Ex. A, p. 38-29.  At no time did Plaintiff complain about his shoulder in relation to the incident.  Ex. A, p. 28-31.

The individuals who were sued by the Plaintiff were the Senior Warden and the two Assistant Wardens of the Willacy County Unit in July 1996.  As the top administrators in that facility, none of those individuals was involved in assigning the Plaintiff to his housing on July 4, 1996, nor were they made aware of the housing assignment or Plaintiff's medical condition by any personnel at the Unit or by the Plaintiff.  There are no specific allegations by the Plaintiff in his First Amended Original Complaint that any of the named Defendants was personally involved with his housing assignment to an upper bunk or that they had a

policy or procedure encouraging the officers of the Unit to disregard the housing restrictions imposed by the medical department.

III.

## UNDISPUTED FACTS

1. Plaintiff Baldemar Espinosa Jr. was an inmate in the Willacy County Unit from June 1996 until November 1996;

2. The Willacy County Unit first opened in January 1996; Ex. B;

3. Defendant Tony Perez was the Senior Warden, and Ramon Rodriguez and Charles Marmalejo were Assistant Wardens at the Willacy County Unit on July 4 and 5, 1996[6];

4. Upon Plaintiff's arrival at the Willacy County Unit, he had a history of seizure disorder for which he was prescribed mediation. Plaintiff also had a history of headaches since at least November 1994. Ex. A, p. 23, 34, 36;

5. Upon arrival at the Willacy County Unit, the Plaintiff's medical history was reviewed by medical personnel, and he was restricted to a lower bunk assignment by the Medical Department Ex. A, p. 36;

6. Housing assignments are made by case managers at the Unit. The case managers were initially trained by the Texas Department of Criminal Justice at the Segovia Unit in Edinburg, Texas before going to work at the Unit. Once

---

[6] Tony Perez and Charles Marmalejo are no longer at the Willacy County Unit. Ramon Rodriguez is still at the Unit as an Assistant Warden.

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 5

CMPDF - www.fesito.com

they arrived at the Unit, they were monitored for two full weeks during their on-the-job training in January 1996 and another two weeks in March 1998. Ex. B.

7.   The Willacy County Unit follows the policies and procedures developed and established by the Texas Department of Criminal Justice.   There is a policy regarding housing restrictions which requires the individuals making the housing assignment to do so in accordance with the restrictions set forth by the Medical Department.   Wackenhut cannot create its own policies and procedures;  Ex. B.

8.   The Plaintiff was confined in administrative segregation from June 25, 1996 until July 4, 1996.   After 5:00 p.m. on July 4, 1996, the Plaintiff was reassigned to the general population and was assigned an upper bunk.   At the time of Plaintiff's housing assignment, there were no lower bunks available; Ex. C;

9.   The Plaintiff did not refuse to go to his housing, submit any type of emergency grievance, or an I-60, (Request to Official form) to the Warden or Assistant Wardens advising them of the bunk assignment error nor did he communicate directly to the Senior Warden or Assistant Wardens;  Ex. C;

10.   Immediately after the incident, Plaintiff made one complaint of a headache, then voiced no further complaints regarding a headache relating to his fall;

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 6

Ex. A, p. 29-31;

11.     On July 5, 1996, the Plaintiff was found on the floor of his cell at approximately 12:45 a.m. after having apparently fallen from the top bunk. The Plaintiff was observed by the medical department for several hours following this incident. The only complaints voiced by the Plaintiff for the first nine hours after his fall was of a headache immediately after the incident. No abnormal physical findings were made by the Medical Department during their assessment and observation of the Plaintiff; Ex. A, p. 30-31;

12.     On July 5, 1996 at 9:30 a.m., Plaintiff mentioned for the first time that he had a backache. The doctor noted a contusion on his back. That contusion was completely resolved no later than July 8, 1996; Ex. A, p. 29-30;

13.     Plaintiff made no complaints of shoulder pain or a shoulder injury related to the incident; Ex. A, p. 29-31;

14.     Plaintiff could have suffered a seizure and fallen from a lower bunk; and

15.     It was not uncommon for Plaintiff to have a headache after a seizure.

IV.

## ISSUES OF LAW

1.     Whether Plaintiff's complaint should be dismissed for failure to exhaust administrative remedies.

2.     Whether the Plaintiff's claims of deliberate indifference are cognizable under

§ 1983.

3.  Whether Plaintiff can maintain § 1983 claim against the Wackenhut Defendants for *respondeat superior.*

4.  Whether the Plaintiff has stated a claim for supervisory liability.

5.  Whether Plaintiff has sustained any damages that are recoverable under § 1983.

6.  Whether the Plaintiff has stated a claim of negligence against the Wackenhut Defendants.

7.  Whether the Plaintiff has stated a claim of intentional infliction of emotional distress against the Wackenhut Defendants.

V.

## BRIEF IN SUPPORT

### A.  *Section 1915(d) Dismissal Standard*

Under 28 U.S.C. § 1915(d), a court may dismiss as frivolous an *in forma pauperis* proceeding whenever it appears the claim has no realistic chance of ultimate success or the claim has no arguable basis in law and fact. *Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993); *Wilson v. Lynaugh,* 878 F. 2d 846, 849 (5th Cir.), *cert. denied,* 493 U.S. 969, 110 S.Ct. 417 (1989). In addition, 28 U.S.C. § 1915(d) authorizes a district court to dismiss *sua sponte* an *in forma pauperis* proceeding for frivolity "at any time, before or after the defendant's answer." *Green v. McKaskle,* 788 F.2d 1116, 1119 (5th Cir. 1986).

To maintain an action under 42 U.S.C. § 1983, Plaintiff must show that a person (1) acting under color of a statute, regulation, or usage of the state; (2) subjects a person within the jurisdiction of the United States to the deprivation of any rights secured by the constitution and laws of the United States. *Bradt v. Smith*, 634 F.2d 796, 799 (5th Cir. 1981), *cert. denied*, 454 U.S. 830, 102 S.Ct. 124 (1981); *Baker v. McCollan*, 493 U.S. 137 (1979).

In the instant case, Plaintiff's *in forma pauperis* lawsuit presents a classic example of a frivolous complaint. The Plaintiff fails to make any allegations that the Senior Warden or Assistant Wardens were personally involved in his housing reassignment to an upper bunk, had any knowledge of Plaintiff's assignment to an upper bunk, or that the individuals making housing assignments were not trained. Because the Plaintiff's claims have no arguable basis in law and in fact and no realistic chance of ultimate success, they are properly subject to dismissal pursuant to 28 U.S.C. § 1915(d).

### B. *Federal Rule of Civil Procedure Rule 12(b)(6) Dismissal Standard*

As described below, the Plaintiff's pleadings, on their face, show beyond doubt that Plaintiff cannot prove any set of facts that would entitle him to relief. In ruling on a Rule 12(b)(6) motion to dismiss, a district court cannot assume the Plaintiff can prove facts that he has not alleged. *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996). A district court should dismiss a case if it is clear that the Plaintiff cannot prove any set of facts that would entitle him to relief under the allegations in his complaint. *Hishon v. King & Spalding*, 467

U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

### C.   *Summary Judgment Standard*

Rule 56(c) provides that summary judgment shall be rendered if there is no "genuine issue as to any material fact and ... the moving party is entitled to summary judgment as a matter of law." Federal Rule of Civil Procedure 56(c), by its very terms, permits summary judgment even if the parties disagree as to some facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510 (1986). Summary judgment is precluded only if the disputed facts "might affect the outcome of the suit under governing law" and if the dispute is genuine. *Id.* A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The district court should grant summary judgment when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

To be entitled to summary judgment as a matter of law, a defendant need not refute the plaintiff's claims but need only show "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554 (1986); *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857 (5th Cir. 1986). Thus, the defendant is entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which [the

plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553; *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986) (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact); *see also Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987).

"By its very terms, [Rule 56(c)] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510 (emphasis in original). Genuine disputes over irrelevant or nonmaterial facts may not provide the basis for reversal of summary judgment. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).

A "material" fact is one that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial; therefore, there can be no genuine issue of material fact. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553; *see also Kroogler v. A.G. Edwards & Sons, Inc.*, 95 F.Supp. 95, 96 (N.D. Tex. 1986).

### D.    *Failure to Exhaust Administrative Remedies*

The Plaintiff filed his Original Complaint on September 13, 1996, and admits in Section IIB on page 2 of the Original Complaint that he did not present the facts relating to

this complaint in the State Prisoner Grievance Procedure. The Plaintiff completely failed to avail himself of the administrative remedies within the prison system as required by 42 U.S.C. § 1997e(a) which states: "No action shall be brought with respect to prison conditions under Section 1993 of this Title, or any Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Section 19973e(a) was amended to its current form by the Prison Litigation Reform Act, Public Law No. 104-134, § 803, 110 Stat. 1321 effective April 26, 1996, which was prior to the accrual of Plaintiff's cause of action. Since the Willacy County Unit is governed by the policies and procedures of the Texas Department of Criminal Justice, Institutional Division ("TDCJ-ID"), there is a two-step grievance process available to prisoners.

Step One of the grievance procedure requires the inmate to submit an administrative grievance at the institutional level. After an investigation, the grievance investigator prepares a report and makes a recommendation to the final decision maker for step one of the process. The final decision maker could be any number of individuals including a warden or assistant warden. If the Step One grievance is not resolved to the inmate's satisfaction, he or she may then proceed with Step Two which is an appeal to the division grievance investigation with the TDCJ-ID. After investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker. The final decision maker of Step Two could be the director, deputy director, regional director or assistant director for TDCJ-

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 12

ID.

Although the Plaintiff makes a conclusionary allegation in his Original Complaint that the issues cannot be resolved through the Inmate Grievance Procedure, he fails to provide any facts to support that allegation. If Plaintiff were simply seeking monetary damages, administrative remedies would not have to first be exhausted. *See Marsh v. Jones*, 53 F.3d 707 (5th Cir. 1995). However, because Plaintiff in his First Amended Original Complaint at page 7 clearly states that he is seeking a declaratory judgement as well as a permanent injunction, it is mandatory that the Plaintiff exhaust his administrative remedies prior to filing suit. The failure of Plaintiff to comply with the requirement set out in 42 U.S.C. §1997e, requires that his claims brought pursuant to 42 U.S.C. § 1983 and any other Federal law be dismissed.

If, however, the Court finds, based upon its own motion or that of the Wackenhut Defendants' that Plaintiff has failed to state a claim upon which relief can be granted, then the Court may dismiss the Plaintiff's claims without first requiring the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(c)(1) and (2).

### E.    *Deliberate Indifference.*

Plaintiff alleges that several of the officers at the Willacy County Unit, who have not been named as Defendants in this case, were told about the Plaintiff's seizure disorder and his medical restriction to a lower bunk, but that nothing was done to remedy the bunk assignment the night of July 4, 1996. Plaintiff alleges that he told two officers about his

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 13

bunk assignment and his restrictions, and they said they would have to check with the Unit

Classification and Medical Department. Another officer allegedly told Plaintiff to go straight

to the Medical Department, but he claims that he was then told by yet another officer that

he needed to submit a written request, which the Plaintiff never did.

There is no evidence that the Wackenhut Defendants had any knowledge of Plaintiff's

medical condition or that they had any personal involvement in the Plaintiff's housing

assignment on July 4, 1996. Therefore, the Wackenhut Defendants did not act with

deliberate indifference towards Plaintiff's serious medical needs. To survive dismissal, there

must be allegations of specific acts or omissions sufficiently harmful to demonstrate

"deliberate indifference" to an inmate's serious medical needs. *Estelle v. Gambel* 429 U.S.

97, 105, 97 S.Ct. 285, 292, (1976). Plaintiff's allegations that he was assigned to an upper

bunk instead of an lower bunk is a complaint about a condition of his confinement. In *Wilson*

*v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 2325 (1991), the Court applied the deliberate

indifference standard to nonmedical conditions of confinement. "Whether one characterizes

the treatment received by [the prisoner] as inhumane conditions of confinement, failure to

attend to his medical needs, or combination of both, it is appropriate to apply the 'deliberate

indifference' standard articulated in *Estelle.*", *Wilson,* 501 U.S. at 319, 111 S.Ct. at 2327

(quoting *LaFaute v. Smith*, 834 F.2d 389, 391-92 (4th Cir. 1987)). Not every incident of

mere negligence with regard to an inmate's serious medical needs amounts to a violation of

the Eighth Amendment. Deliberate indifference involves the "unnecessary and wanton

infliction of pain." *Estelle* 429 U.S. at 105, 97 S.Ct. at 291. Cases such as this do not evince

deliberate indifference and are properly subject to dismissal. *Johnson v. Treen*, 759 F.2d

1236 (5th Cir. 1985).

The United States Supreme Court adopted a "subjective recklessness test" as used in

criminal law as the appropriate definition of deliberate indifference under the Eighth

Amendment. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The Court held that

a prison official is not deliberately indifferent "unless the official knows of and disregards

an excessive risk to an inmate's health or safety; the official must be both aware of facts from

which the inference could be drawn that a substantial risk of harm exists, and he must also

draw that inference."*Farmer* 511 U.S. at 838, 114 S.Ct. at 1979.

In this case, there is no evidence that the Wackenhut Defendants specifically knew

of Plaintiff's medical condition at the time of his housing assignment on July 4, 1996 or any

difficulties in assigning inmates to appropriate housing. Therefore, they could not have

known of an excessive risk to inmate health or safety. Since they were not personally

involved in assigning Plaintiff to an upper bunk that night, they could not have disregarded

his serious medical needs.[7] Furthermore, the Plaintiff fails to make any allegations

whatsoever and the summary judgment evidence establishes that he or anyone else informed

the Senior Warden or either assistant wardens either orally or in writing about his upper bunk

assignment. Ex. C. Consequently, Plaintiff's claims of deliberate indifference should be

---

[7] July 4, 1996 is the only night Plaintiff was assigned to an upper bunk during his confinement at the Willacy County Unit. Ex. C.

dismissed.

> **F.** **The Wackenhut Defendants Were Not Personally Involved and Cannot Be Held Liable under the Theory of Respondeat Superior.**

Plaintiff fails to plead any facts indicating any personal involvement by Senior Warden Tony Perez, Assistant Warden Ramon Rodriguez, or Assistant Warden Charles Marmalejo in assigning him to an upper bunk in the general population on July 4, 1996. Furthermore, Plaintiff has sued Wackenhut Corrections Corporation which is an entity that can only be held liable through the doctrine of *respondeat superior* given that it is an entity which can only commit acts through its agents and/or employees. Therefore, Wackenhut Corrections Corporation was not personally involved in Plaintiff's housing assignment and cannot be held liable under § 1983 either.

The Fifth Circuit has held that "[p]ersonal involvement is an essential element in a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert denied*, 42 U.S. 897, 104 S.Ct. 248 (1983). A plaintiff bringing a civil rights action cannot simply make generalized allegations or assert legal or constitutional conclusions. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). Rather, he must state particular facts specifying the personal involvement of each defendant if he expects his complaints to be sustained. *Fee v. Herndon*, 900 F.2d 804, (5th Cir. 1990), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279 (1990). The requirement of personal involvement also prohibits the sustaining of any complaint premised upon vicarious liability or *respondeat superior*. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 16

It is apparent that Defendants Perez, Rodriguez, and Marmalejo are being sued pursuant to § 1983 because of their status as supervisors at the Willacy County Unit. Under § 1983, however, there is no cause of action for *respondeat superior*. Supervisory officials such as Defendants Perez, Rodriguez, and Marmalejo cannot be vicariously liable solely on the basis of their employer/employee relationship with an alleged tortfeasor, nor can the entity Wackenhut Corrections Corporation. *Williams* 909 F.2d at 123; *Lozano* 718 F.2d at 768.

In order to state a civil rights claim, a plaintiff must enunciate facts illustrating defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). A supervisory official may be held liable when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation. *Thompsons v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *Lozano* 718 F.2d at 768. Thus, to hold a supervisory official accountable for the acts of his subordinates, § 1983 "requires more than a simple ratification of an impermissible act when the ratification is based on independent legitimate reasons." *Bowen v. Watkins* 669 F.2d 979, 988 (5th Cir. 1982).

To prevail against any of the Wackenhut Defendants, Plaintiff must show that their actions or failure to act, if any, "caused" or was the "moving force" in causing Plaintiff's harm. *See Monell v. Department of Social Services*, 436 U.S. 658, 692, 694, 98 S.Ct. 2018, (1978); *Vela v. White*, 703 F.2d 147, 153 (5th Cir. 1983).

In this case, the Plaintiff has failed to state any facts much less state with particularity any facts showing that Defendants Perez, Rodriguez, or Marmalejo were "personally involved" in the alleged violation. *See e.g. Watson v. Interstate Fire & Casualty Company,* 611 F.2d 120, 123 (5th Cir. 1980) or "actively adopted policies which were wrongful or illegal." *See Vela* 703 F.2d at 153. In fact, none of the Defendants is specifically identified in relation to any specific alleged facts set forth in Plaintiff's First Amended Original Complaint. Furthermore, there is no allegation by Plaintiff that any of the Defendants were even advised of Plaintiff's medical condition or the erroneous bunk assignment the night of July 4, 1996 and the summary judgment establishes the lack of notification. Ex. C. Furthermore, there are policies and procedures governing housing assignments for inmates with medical restrictions, but those policies and procedures are developed by the TDCJ-ID not the Wackenhut Corrections Corporation. Ex. B.

Defendants Perez, Rodriguez, and Marmalejo's inclusion of this suit appears to be based solely upon their positions as supervisors and, therefore, the only possible basis for liability against them would be under the doctrine of *respondeat superior.* As such, the claims against them brought pursuant to § 1983 should be dismissed.

### G.  *Supervisory Liability*

The Plaintiff has alleged that the Wackenhut Defendants "failed to properly train prison guards to recognize and provide adequate safeguards to protect Plaintiff's medical

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 18

needs . . ."[8]   Plaintiff fails to provide any specific facts regarding the Wackenhut Defendants' alleged failure to properly train the prison guards.   Rather, Plaintiff simply makes a conclusory allegation.

To hold a supervisory official liable under § 1983 for failure to train, the Plaintiff must show that: 1) the supervisor either failed to supervise or train the subordinate official; 2) a causal link exists between the failure to train or supervise and the violation of the Plaintiff's rights; and 3) the failure to train or supervise amounts to deliberate indifference. *Smith v. Drenoettsy*, 158 F.3d 908 (5th Cir. 1998); *Henshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986). As previously stated, for an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837, 114 S.Ct. at 1979.

The summary judgment evidence conclusively establishes that the prison guards received substantial training including 160 hours prior to going to work at the Unit, 40 hours of on-the-job training, and 40 hours of training annually.  Ex. C.  The training includes instruction on the TDCJ-ID instituted policies and procedures regarding housing assignments for inmates with medical restrictions.  Ex. C.  The individual Wackenhut Defendants Perez, Rodriguez, and Marmalejo are not involved in that training.  Ex. C.  The summary judgment evidence further establishes that case managers, not prison guards, typically make the

---

[8]Assistant Warden Marmalejo did not even go to work at the Unit until Jun 3, 1996.  Ex. C.

housing assignments. Ex. B. The case managers are trained by TDCJ-ID initially and then were observed during on-the-job training by Darryl Anderson, a certified staff instructor with eight years' experience in classification, for two full weeks in January 1996 and two full weeks in March 1996. Ex. B. Therefore, there was no reason to supervise or oversee each and every housing assignment made at the Unit. The Wackenhut Defendants had no reason to believe that the housing assignments were not being made appropriately since July 4, 1996 was the first night the Plaintiff had not been assigned to a lower bunk during his confinement at the Unit. Ex. C. Since the Wackenhut Defendants did not fail to train or supervise the prison guards, they cannot be held liable for supervisory liability.

Additionally, even if there were a failure to train or supervise, such failure certainly did not constitute deliberate indifference. There is no evidence that the Wackenhut Defendants knew of any problems in assigning Plaintiff to housing in accordance with his medical restrictions, and the prison guards and case managers were trained on the policies and procedures regarding such assignments. Ex. B and C. The night of July 4, 1996 was the first and only time Plaintiff was not assigned to a lower bunk during his confinement at the Unit and Plaintiff was not assigned to an upper bunk on July 4, 1996 until after 5:00 p.m. Ex. C. Furthermore, there is no evidence that the Plaintiff or anyone else ever informed the Wardens Perez, Rodriguez or Marmalejo about his seizure disorder or housing assignment that night. Ex. C. These facts negate a showing of deliberate indifference. Therefore, Plaintiff's claims of failure to train should be dismissed.

## H.    *No Damages.*

In order for the Plaintiff to prove any claim under 42 U.S.C. § 1983, he must establish that: 1) the Defendant intentionally committed acts which operated to deprive him of a right secured by the Constitution of the United States; 2) the Defendant acted under the color of state law; and 3) that the Defendant's acts were the legal cause of the Plaintiff's damages. As already previously discussed, the Defendants did not commit any acts or omissions intentionally or otherwise.  However, assuming *arguendo* that they did commit some act or omission, the Plaintiff's § 1983 claims should be dismissed because he did not sustain any physical damages.  Additionally, since there are no physical injuries, the Plaintiff cannot recover for any mental or emotional trauma.

Part of the Prison Litigation Reform Act, Congress adopted 42 U.S.C. § 1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury," The Fifth Circuit Court of Appeals analyzed the definition of "physical injury" in *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997).  The Court observed that there was no definition in the statute for a physical injury but held that the well-established Eighth Amendment standards would guide the Court's analysis in determining whether a prisoner had sustained the necessary physical injury to support a claim for mental or emotional suffering.  The Court determined that based on Eighth Amendment standards, the injury must be more than *de minimus* but need not be significant.

In *Siglar*, the inmate suffered a sore, bruised ear lasting for three days as a result of acts by the defendants. The Court found that a sore, bruised ear lasting for three days was *de minimus*.

In this case, even if there were not a problem with causation, the Plaintiff merely complained of a headache immediately after his seizure and a backache nine hours later. Ex. A, p. 29-31. There were no further complaints voiced. Ex. A, p. 29-31. The only objective injury noted was a contusion to his back. Similar to the sore, bruised ear in *Siglar*, Plaintiff's back contusion lasted no more than three days. His medical records show that the contusion was resolved by July 8, 1996. Ex. A., p. 28. These alleged injuries even if connected to his assignment to an upper bunk are *de minimus*.[9] As such, they are insufficient for the Plaintiff to recover under 42 U.S.C. § 1983. Since there is no physical injury, the Plaintiff cannot recover for any alleged mental or emotional injury. *See* 42 U.S.C. § 1997e(e).

### I. *Plaintiff Also Claims in a Conclusory Fashion that the Wackenhut Defendants were Negligent.*

As previously described, the Wackenhut Defendants were not personally involved in committing any acts or omissions regarding the Plaintiff's assignment to an upper bunk in the

---

[9] The Plaintiff mentions in his First Amended Original Complaint that he hurt his shoulder, but there is no mention of his shoulder in his medical records to the incident. Ex. A., p. 28-31. The medical records do however state that on September 9, 1996, Plaintiff told medical personnel that he had chronic pain to his right shoulder for the past two years following an automobile accident. Ex. A, p. 34. Furthermore, Plaintiff fell on July 7, 1996 and injured his right shoulder. Ex. A, p. 24.

general population the night of July 4, 1996. The Plaintiff has failed to plead the doctrine

of vicarious liability with regard to his negligence claim. Therefore, given the lack of any

specific allegations of acts or omissions by the Wackenhut Defendants, they cannot be

negligent. In order for the Plaintiff to prove his negligence claim, he must prove that: 1)

Defendants owed Plaintiff a legal duty, (2) Defendants breached that duty; and (3) Plaintiff

suffered damages that were proximately caused by that breach. *Greater Houston Trans. Co.*

*v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

Negligence means the failure to use ordinary care; that is, failing to do that which a

person of ordinary prudence would have done under the same or similar circumstances, or

doing that which is a person with ordinary prudence would not have done under the same or

similar circumstances. TEX. P.J.C. 2.1 (1998).

Ordinary care is the degree of care that would be used by a person of ordinary

prudence under the same or similar circumstances. TEX. P.J.C. 2.1 (1998).

Proximate cause means that cause which in a natural and continuous sequence

produces an event and without which cause such event would not have occurred. In order

to be a proximate cause, the act or omission complained of must be such that a person using

ordinary care would have foreseen that the event or some similar event might reasonably

result therefrom. There may be more than one proximate cause of an event. Additionally,

the plaintiff must have sustained some injury or damage. TEX. P.J.C. 2.4 (1998).

There is no evidence and there are no specific allegations that the Wackenhut

Defendants were personally involved in any acts or omissions that could have amounted to negligence. Rather, the attached summary judgment evidence establishes that the Wackenhut Defendants were not involved in making Plaintiff's housing assignments. Ex. B and C. Additionally, the act of the individual who assigned Plaintiff to an upper bunk did not cause the Plaintiff's seizure nor did it cause his headache. The Plaintiff could have suffered a seizure even if he had been assigned to a lower bunk and has in fact suffered seizures before and after the incident which were unrelated to his housing assignment. Furthermore, the Plaintiff's medical records provide sufficient proof that the Plaintiff often suffered headaches and has had a history of headaches since his car accident in November 1994. Ex. A, p. 23, 24, 25, 27. There is no evidence the headache the Plaintiff suffered from in this case was related to his fall as opposed to the seizure itself. Additionally, had the Plaintiff been assigned to a lower bunk and suffered a seizure, he could have likewise fallen to the floor. Therefore, his falling from the bunk was not caused by his assignment to an upper bunk as opposed to a lower bunk. He could have fallen from either bunk.

Finally, the Plaintiff has not sustained any injuries or damages in this case. The Plaintiff was taken to the Medical Department immediately after he fell. He made one fleeting complaint about a headache which, based on his medical records, appeared to be related to the seizure itself or his history of headaches. Ex. A, p. 23, 33, 34, 36. He was examined by the Medical Department and was observed for the next several hours. Ex. A,

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 24

p. 30-31.  No injuries were noted until a doctor noticed a contusion on Plaintiff's back when

he mentioned mid back pain for the first time.  Ex. A, p. 29.  The contusion was completely

resolved no later than July 8, 1996.  Ex. A, p. 28.   No further complaints were made  by the

Plaintiff.  Therefore, Plaintiff has failed to state a claim of negligence and the summary

judgment evidence negates any allegations that the Wackenhut Defendants were negligent.

### J.      Intentional Infliction of Emotional Distress.

In Texas, in order to establish a claim for intentional infliction of emotional stress, the

Plaintiff must prove that the conduct of the defendant was reckless, extreme, and outrageous,

and that such conduct caused the Plaintiff to suffer severe emotional distress.  As already

discussed, the Wackenhut Defendants did not commit any acts or omissions relating to the

incident at issue in this case, and there has been no invocation of the doctrine of vicarious

liability.  Furthermore, based on the Plaintiff's own description of the events involving the

other officers at the Willacy County Unit who were not sued in this matter, their conduct,

if true, was far from reckless, extreme, and outrageous.  The Plaintiff does not allege that any

of the unnamed officers actually assigned him to the incorrect bunk much less assigned him

to an incorrect bunk intentionally; he simply alleges that he informed them of the incorrect

assignment and each tried to offer a solution or provide Plaintiff with instructions on how

to resolve the problem.  The first officers allegedly said that they would have to "check into

this with the Unit Classification and Medical Departments."  Another officer supposedly told

Plaintiff "to go straight to the Medical Department and inform them."  Yet another officer

supposedly told Plaintiff that "he would need to submit a written request." None of that conduct would offend the decency of a civilized society.

Furthermore, the Plaintiff merely states in a conclusory fashion that he sustained emotional distress, but does not provide any specific facts or allegations to support that claim, nor do his medical records substantiate a claim of severe emotional stress resulting from this one isolated incident. Therefore, the Plaintiff's claim of intentional infliction of emotional distress should be dismissed.

## CONCLUSION

Plaintiff has failed to plead sufficient facts to state a cause of action under 42 U.S.C. § 1983. Additionally, Plaintiff has failed to exhaust his administrative remedies as required. Finally, the Wackenhut Defendants summary judgment proof is sufficient to establish that there is no genuine issue of material fact in this case and that they are entitled to judgment as a matter of law as to all claims.

WHEREFORE PREMISES CONSIDERED, Defendants Wackenhut Corrections Corporation, Warden Tony Perez, Assistant Warden Ramon Rodriguez and Assistant Warden Charles Marmalejo pray that this Court grant their Motion to Dismiss and/or Motion for Summary Judgment with Brief in Support and enter a final judgment dismissing all of

Motion to Dismiss and/or Motion for Summary Judgment
with Brief in Support
- Page 26

Plaintiff's claims with prejudice. Defendants further pray for any other relief to which this

Court deems they are justly entitled.

Respectfully submitted,

By: _Linda M. Kearney_
       Linda M. Kearney
       Federal I.D. No. 18425
       State Bar No. 00787811

       One Shoreline Plaza
       P. O. Box 2968
       Corpus Christi, TX 78403-2968
       (512) 880-5808 - Office
       (512) 880-5844 - Fax

       ATTORNEYS FOR DEFENDANTS
       WACKENHUT CORRECTIONS
       CORPORATION, WARDEN TONY PEREZ,
       ASST. WARDEN RAMON RODRIGUEZ,
       and ASST. WARDEN CHARLES MARMALEJO

OF COUNSEL:
**PORTER, ROGERS, DAHLMAN & GORDON, P.C.**
One Shoreline Plaza, Suite 800
P. O. Box 2968
Corpus Christi, Texas 78403-2968
Telephone: (512) 880-5808
Facsimile: (512) 880-5844

## AFFIDAVIT

THE STATE OF TEXAS
§
§
§

BEFORE ME, the undersigned authority, personally appeared Cynthia J. Hendricks, who, being by me duly sworn, deposed as follows:

"My name is Cynthia J. Hendricks. I am over twenty-one years of age, of sound mind, capable of making this Affidavit and personally acquainted with the facts herein stated.

I am employed as the Accredited Records Technician for the F. Robertson Unit of the Texas Department of Criminal Justice, Institutional Division, and my office is located in Abilene, Texas. I do hereby certify that I am the custodian of Health Records maintained in the regular course of business on each and every inmate incarcerated in the French Robertson Unit of the Texas Department of Criminal Justice, Institutional Division. I have reviewed business records within the file on inmate Espinosa, Baldemar Jr., T.D.C.J. No. 576926. I hereby certify that the attached copies of documents from the Health Records for the period June 4, 1996 to February 1997 maintained on inmate Baldemar Espinosa are true, complete and correct copies of the original records now on file in my office and in my custody.

I further certify that the records attached hereto are maintained in the usual and regular course of business of the Health Services Division of the Texas Department of Criminal Justice, Institutional Division, and that such records are maintained on each and every inmate confined here. All memoranda, reports, records or data compilations kept therein are made at or near the time by, or from information transmitted by, a person with knowledge of the events, acts, conditions, opinions or diagnoses described. These records are kept in the course of a regularly conducted business activity, and it is the regular practice of this institution to make such memoranda, reports, records or data compilations.

In witness whereof, I have hereto set my hand this the 26th day of March, 19 97."



LARRY D. ANDERSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/13/99

*Cynthia J. Hendricks* (CYNTHIA J. HENDRICKS)
(Print Name)
Accredited Records Technician
French Robertson Unit
Texas Department of Criminal
Justice, Institutional Division

SWORN TO AND SUBSCRIBED BEFORE ME, by the said Cynthia J. Hendricks, on this the 26th day of March, 19 97, to certify which witness my hand and seal of office.

My Commission Expires:
3/13/99

*Larry Anderson* Larry Anderson
(Print Name)
NOTARY PUBLIC in and for
the State of Texas

## EXHIBIT A

001

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

**Name:** Espinoza, Dildarment

**TDCJ No.:** 576926

**Unit:** CB

| Date & Time | Notes |
|---|---|
| 3-13-97 | 0928 SCR req Dilantin be taken once daily instead of twice. & C/o ear drainage - MD for med eval — B. West, LVN |
| 18-97 | 0908 to clinic for C/o ear drainage & req Dilantin chg T 44 97¹ /38/3 -63-18 — B. West, LVN, LPN |
| 3/18/97 | 10 A  C/o in left ea — chronic stch — Kelfex 500 TiD x 10  VitaE 200  AU @ P¹ x 6H |
| 3-18-97 | 1200 Mailed P. Bazzow RN  _____ H.E. SCHAFFER, M.D. |
| 3-20-97 it 150 | 0955 To clinic for C/o ear drainage cont- T 97³ R 18 P 71 BP 122/69  B. West, LVN |
| 3/26/97 | 10⁵⁰ Chron left aftr xF-5 jean On K flex  Rx Cortrisporin sus drops #II @ P¹ Vit D¹ /2.0  Noted 3-26-97 1015 _____ _____ H.E. SCHAFFER, M.D. |

Please sign each entry with status.

IGM - 1 (Rev. 5/92)

002

①

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

**Name:** Espinosa, Baldemar

**TDCJ No.:** 572926

**Unit:** RB

| Date & Time | Notes |
|---|---|
| 2/25/97 | I/M Puller app regular |
| | H.E. SCHAFFER, M.D. |
| 2/27/97 0210 BP 152/89 HR 80 R 18 T=96° | To clinic for Phenobarbital. c/o dizziness, nausea + feels like he may have a seizure. VS WNL. Skin warm + dry to touch. Ambulating ē difficulty. Gave I/M bowl of cereal /milk + escorted back to cell. W/Bounds RN |
| 2/27/97 0245 | Officer calls stating that this I/M is lying down, not responding to name when called. Nurse sent to eval. — W/Bounds RN |
| 2-27-97 0255 | Cell side for c/o seizure. I/M laying in bed ē on gown. No obvious sign of distress noted. I/M non responsive to verbal stimuli. Ammonia cap × 2 broken & placed below nostrils. I/M then became responsive. Stating he had a seizure. Would not give detailed description of events leading to seizure. States he has a headache + hands are asleep. States this has happened before + says will go away w/ few min. Instructed I/M to sit up + eat cereal + milk. Call if s/s returns or worsens ——— [signature] RN |
| 3-3-97 | 0945 SCR need. Rx. Clippin shave pass. M.D. appt. [signature] |
| 3-6-97 WT. 143 lbs. | 0900 I/M to clinic for eval. acne to face. T 97' P. 64 R. 16 BP 123/74 P. Bowen RN. |
| 3/6/97 | O: acne ā 2° cell facial scan. P: [illegible] |

Please sign each entry with status:

ISM-1 (Rev. 5/92)

003



TEXAS DEPARTMENT OF CRIMINAL JUSTICE
HEALTH SUMMARY FOR CLASSIFICATION

NAME: ESPINOSA,BALDEMAR JR.
TDCJ#: 576926      SID#: 03771484
UNIT: RB          HOUSING: 3AC1-51B
JOB: UNASSIGNED-TRANSIENT

DOB: 06/08/1968
WGT: 159 LBS
HGT: 5'03"

P U L H E S
----------------
|3|1|3|1|1|1|
|G|A|C|A|A|A|
|P| |P| | | |
----------------

I.  UNIT OF ASSIGNMENT (CHECK ONE)
  X  A. NO RESTRICTION
  __ B. REGIONAL MEDICAL FACILITY
  __ C. EXTENDED CARE FACILITY
  __ D. PSYCHIATRIC CARE FACILITY

  __ E. BARRIER-FREE FACILITY
  __ F. SINGLE LEVEL FACILITY
  SUITABLE FOR TRUSTEE CAMP ASSIGNMENT?X YES__
  SUITABLE FOR SAIP FACILITY?        X YES__

II. HOUSING ASSIGNMENT
A. BASIC HOUSING (CHECK ONE)
  X  1. NO RESTRICTION
  __ 2. SINGLE CELL ONLY
  __ 3. DOUBLE CELL ONLY
  __ 4. SPECIAL HOUSING (HOUSING WITH
        PATIENT WITH LIKE MEDICAL CONDITION
  __ 5. CELL BLOCK ONLY

B. BUNK ASSIGNMENT (CHECK ONE)
  __ 1. NO RESTRICTION
  OO 2. LOWER ONLY

C. ROW ASSIGNMENT (CHECK ONE)
  X  1. NO RESTRICTION
  __ 2. GROUND FLOOR ONLY

III.WORK ASSIGNMENT/RESTRICTIONS (CHECK ALL THAT APPLY)
  __ 1. MEDICALLY UNASSIGNED
  __ 2. PSYCHIATRICALLY UNASSIGNED
  __ 3. SEDENTARY WORK ONLY
  __ 4. FOUR HOUR WORK RESTRICTION
  __ 5. FOUR HOUR LIMITED WORK RESTRICTION
  __ 6. EXCUSE FROM SCHOOL
  __ 7. LIMITED STANDING
  __ 8. NO WALKING > ___ YARDS
  __ 9. NO LIFTING > ___ LBS.
  __ 10.NO BENDING AT WAIST
  __ 11.NO SQUATTING
  OO 12.NO CLIMBING
  __ 13.LIMITED SITTING
  __ 14.NO REACHING OVER SHOULDER

  __ 15.NO FOOD SERVICE
  __ 16.NO REPETITIVE USE OF HANDS
  __ 17.NO WALKING ON WET UNEVEN SURFACES
  __ 18.DO NOT ASSIGN TO MEDICAL
  __ 19.NO WORK IN DIRECT SUNLIGHT
  __ 20.NO TEMPERATURE EXTREMES
  __ 21.NO HUMIDITY EXTREMES
  __ 22.NO EXPOSURE TO ENVIRONMENTAL POLLUTAN
  __ 23.NO WORK WITH CHEMICALS OR IRRITANTS
  __ 24.NO WORK REQUIRING SAFETY BOOTS
  OO 25.NO WORK AROUND MACHINES WITH MOVING P
  __ 26.NO WORK EXPOSURE TO LOUD NOISES
  __ 27.NO WORK REQUIRING COMPLEX INSTRUCTION

IV. DISCIPLINARY PROCESS (CHECK ONE)
  X  A. NO RESTRICTIONS
  __ B. CONSULT REPRESENTATIVE OF MENTAL HEALTH DEPARTMENT BEFORE TAKING DISCIPLINARY ACTIO
  __ C. CONSULT REPRESENTATIVE OF MEDICAL DEPARTMENT BEFORE TAKING DISCIPLINARY ACTION

V.  INDIVIDUALIZED TREATMENT PLAN (CHECK ALL THAT APPLY)
  X  A. NO RESTRICTION               __ C. PSYCH REPRESENTATIVE REQUIRED
  __ B. MEDICAL REPRESENTATIVE REQUIRED

VI. TRANSPORTATION RESTRICTIONS (CHECK ONE)
  X  A. NO RESTRICTION               __ C. WHEELCHAIR VAN
  __ B. EMS AMBULANCE                __ D. VAN/SOUTHERN REGION ONLY)

004

# T₂A DEPARTMENT OF CRIMINAL JUSTICE

Name: _Espinosa_   TDCJ #: _576926_   Date: _02/24/97_   Time: _0350_

Unit: _Transient_   Work Assignment: _Hoe Squad_

## Nursing Sick Call Protocol for:

# FUNGAL INFECTIONS SYMPTOMS
## (Athletes Foot, Jock Itch)

Check all items that are appropriate and/or complete all blanks.

**ALLERGIES**

**HISTORY:**

. Onset: _Chronic_

. Location of lesion(s):

| | Left | Right | Bilateral |
|---|---|---|---|
| Arms | ☐ | ☐ | ☐ |
| Hands | ☐ | ☐ | ☐ |
| Legs | ☐ | ☐ | ☐ |
| Feet | ☐ | ☐ | ☑ |
| Groin | ☐ | ☑ | ☐ |
| Trunk | Anterior ☐ | | Posterior ☐ |
| Scalp ☐ | | | |
| Fingernails ☐ | Toenails ☐ | | |

. History of similar problems: _lot of tetc helps_
. Known alleviating factors: _but does not go away_

. Current Medications: _Phenobarb, Dilantin_

**PHYSICAL ASSESSMENT:**

. T _____  P _55_  R _19_  BP _123/95_  WT _____

. Extremities:
Redness ☑  Scaling ☑  Swelling ☐
Cracking ☑  Pruritis ☐  Odor ☐
Drainage: ☐  Purulent ☐  Serous ☐

. Groin/Genitalia:
Verrucae ☐  Plaques ☐  Ulcers ☐  Satellite lesions ☐
Penile Discharge ☐  Drainage ☐
Purulent ☐  Serous ☐  Bloody ☐

. Other areas:
Inflammation: Scaling ☐  Diffuse ☐  Patchy ☐
Drainage: Purulent ☐  Serous ☐  Bloody ☐

. COMMENTS: _abd y/o needing CSP -_
_S.H. amt red, began to S.H. reverse_
_seizure schedule, M.D. appt for CSP_
_eval also c/o needing labs. Pulhes restriction_

**NURSING CARE PLAN:**
Refer to MD/DO/PA as soon as possible if:
1. Marked swelling, drainage, discharge, or fever is present.
2. a. Presence of warts, ulcers, swelling, penile discharge, satellite lesions or placques.
   b. Fungal infection of scalp or nails.
3. If none of the above, instruct patient to:
   a. Keep skin clean by washing daily with soap & water, rinse thoroughly and dry completely.

---

b. Do not apply medication to wet skin surfaces.
c. Wear clean socks and underwear. Change daily.
d. Return to Clinic if symptoms persist.

**NURSING PROTOCOL:**
Check in space provided if medication(s) dispensed.

___ **DOMEBORO SOAKS** - Dissolve 1 packet in warm water and soak for 20 minutes daily x 5 days.
Teaching: Keep feet clean and dry.

___ **BETADINE OINTMENT**  Apply bid x 7 days.
Teaching: Keep affected area clean & dry.
Do not apply to wet skin.
Use sparingly.

✓ **ANTIFUNGAL CREAM 1%** Apply qid x 30 days.
Teaching: Avoid contact with eyes.
If condition worsens, discontinue use, return to Clinic.
Use sparingly.

___ **ANTIFUNGAL POWDER**
Sprinkle on feet daily x 30 days.
Teaching: Do not apply to wet skin.
Keep affected areas clean and dry.

**DISPOSITION**
☑ NO RESTRICTIONS
☐ Lay-in: START _____ STOP _____
           Date/Time        Date/Time
☐ Chart Referral
☐ Physician Notified
                              _____
                              Date/Time
☑ Physician/P.A. Appt. _____
                          Date/Time

☑ Medications Given:
☑ Per Protocol
☐ One Dose ONLY

Nurse Signature _____  02/24/97 - 0350
                                Date/Time

R.N. Signature _R. Michael Ray_  2/24/97 0350
                                  Date/Time

Physician Signature _____  Date/Time

A-16 (7/94)

005

# CLiNiC NOTES

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

me: *Espenora, Baldemar*

CJ No.: *576096*

i: __ROBERTSON UNIT__

| e & Time | Notes |
|---|---|
| -20-97 0845 | I'm chained in to PB Unit med. chart review J/Harler |
| 0/97 0940 | CID = CHAIN-IN CHART REVIEWED — R Medina |
| 12-97 1025 | SCR — c/o jock itch, claims he was on medication and it hasn't gone away & requesting clipper shave pass due to acne prob. NSC — C Galbenn |
| 24/97 0350 | NSC — Jce Patrool H&N-16 J/J Ochmn |

Name: _Cephus_ _Bademan_

TDCJ No.: _576926_

Unit: _R.B._

# CLINIC NOTES

TEXAS DEPARTMENT OF CRIMINAL JUSTICE

### NURSE'S INCOMING CHAIN REVIEW

| | |
|---|---|
| DATE ENTERED TDCJ: | DATE RECEIVED THIS UNIT: _2-20-07_ |

IMMUNIZATIONS: D/T DATE: _10/95_     SKIN TEST PPD: DATE: _7/96_     RESULTS: _Ø MM_

TB      PROPHYLAXIS?      ☐ YES   ☒ NO      DATE STARTED:
                                                          DATE TO COMPLETE:

TB      TREATMENT?      ☐ YES   ☒ NO      DATE STARTED:
                                                          DATE COMPLETED:

SEROLOGY DATE: _10/95_     RESULTS: _N.R._     HIV: ☒ NOT TESTED   ☐ REACTIVE   ☐ NONREACTIVE

| CHRONIC ILLNESS/DISABILITIES/CHRONIC CLINICS | HSM-18 AND MPL WERE REVIEWED FOR COMPLETION AND ACCURACY? ☐ Yes ☐ No | | | | | |
|---|---|---|---|---|---|---|
| _Seizure Clinic_ | P | U | L | H | E | S |
| | 3 | 1 | 3 | 1 | — | — |
| | C | A | C | A | | |
| | P | P | P | P | | |

TREATMENT SPECIAL CARE/FOLLOW-UP DIET APPOINTMENT(S):

AUDIOLOGY: CLASS:

OPHTHALMOLOGY: VA:           GLASSES:           TEST/RETEST:

MEDICATIONS RECEIVED FROM SENDING UNIT? ☐ YES   ☐ NO

ALLERGIES: 1.        2.        3.        4.

MEDICATION ORDERS:

_phenytoin Sodium 100m Bid_ 6.

_Phenobarbital 30mg Tid_ 7.

8.

9.

10.

LIMITATIONS:

WORK: _No Climbing_   _No Work around Machine w/ moving parts_
DISCIPLINE:       HOUSING:       BUNK: _Lower Only_

NURSE'S SIGNATURE: _9/Taylor RN_      DATE/TIME: _2/20/97   0845_

PHYSICIAN'S SIGNATURE: _____      DATE/TIME: _2/20/87   1205_

1 Front (Rev. 12/93)

**007**

CitaPDF - www.tasha.com

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

Name: _Espinoza Baldemar Jr._
TDCJ No.: _57 69 26_
Unit: _D/L_

| Date & Time | Notes |
|---|---|
| 9:45 8-97 | Inmate refused to remain medical records sent off to Major Harrell this date for signature of 14 pages Kms. Wells Medical Records |
| FEB 05 1997 | C94CSCR ↑ 4/o Rx for seizures was decreased & is causing HA's & loss of appetite re: DR APPOINTMENT 2.6.97 @ 0900 W Martinez CC |
| 09? 1020 | Rx Causing HA + loss of Appetite. Ⓢ wt 144  T-97.7 P 66 R-16 B/P: 120/71 Ⓟ Refer to MD — K Ralston Lvn. |
| 97 :30 | S - 4/o 28 y.o. ♂ C O - F/U on meds Rx A - SEIZURE DISORDER Pt will AWAIT LAB Reports |
| :38 9-97 | Inmate refused to review medical chart no one well at this time. Ms. Wells Medical Records |
| 18-97 | 0200 chained out from DH Unit. error ✗ ✗ P. McKill P Rn |
| 8-97 1000 | Received BC ext RB asn. Meds are in Cblk Clinic pharmacy. ___ Rn |
| :00 01 | Chart reviewed for chain from BC to RB 01 ASGN/ Reg psy ser. Meds ↑ chart & x rays — D Krestson |

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

e: Espinosa Baldemar Jr

CJ No.: 57 69 26

t: D/L

| e & Time | Notes |
|---|---|
| 3-97 1310 | Seizures ○ See ITP ℗ Refer to M.D. Rollerson |
| -97 | S- ///. For GVN chronic clinic |
| O/A | seizure disorder |
| .13 | Pt. becomes malignant on T.K.O. dosage |
| | ① Dilantin Level |
| | ② Pb Level |
| | ③ Dilantin 100mg |
| | ⊕ ī cap B.I.D. × |
| | ④ Pb 30 mg 90 |
| | ō ī tab B.I.D. days |
| 4/97 40 | Blood was drawn 1/24/97 a 0630 for a Phenobarbital level & Dilantin level & sent to CMH lab for test |
| N 24 1997 | 1320 SR 4D cold by ... |
| 5-97 0430 | S-Inmate to Clinic for nurse appointment. sec c/c cold. ○ wt 145, B/P 110/87, Pulse 70, RES 18, Temp 98.3 |
| | A) c/o headache, productive cough with yellow phelm, itchy throat, 4o achy bones, no energy. P) Robitussin: Tid × 5 days Dimetapp: Tid × 5 days. |
| | per protocol ms. Zumwalt |

e sign each entry with status.

1 (Rev. 5/92)

009

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 37 of 72

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

ne: _Espinosa Valdemar Jr_

J No.: _57 69 26_

i: _D H_

| & Time | Notes |
|---|---|
| -22-96 @ 1240 | Walk In: c/o cold symptoms — temperature 97⁵ — tylenol 325 mgt q pm new — c̄ Sudafed ↑ ɉ o now. Pt teaching to rest & ↑ fluids & to place in SCP to be scheduled. _____ M Nicolson |
| C 23 1996 | 0925 SCR c/o cold sx right **NURSE APPOINTMENT** |
| 12-24-96 @ 0430 | ○ _____ A Martinez SC |
| 24-96 0430 | Inmate to clinic for nurse appointment. ed R1 _____ S now, wt 146 B/P 134/85 Pulse 81 Res 16 Temp 97.8 A) c/o burning through nose area during nose. P) coldbusters ÷ Tid × 7 days. _____ per protocol Dr. Zimmerman |
| 24-96 @ 0805 hrs | I.M. called in for consult refusal of services signed by I.M. _____ |
| 5-97 | MHO consult & _____ re: psych. See PAMHE in psych section _____ C Lon A |
| 10-97 ○300 | NSCR - request med renewal. Reply. |
| | **NURSE APPOINTMENT** 1-11-97  1000.  ○ Scott RN _____ |
| 11/97 1045 | Renew meds - Schedule for Chronic Clinic ○ not expired until 3-16-97 _____ Noted _____ N Duggar MA/CID _____ N Duggar 1/11/97 |



# MEDICAL INFORMATION TRANSFER FORM
## Confidential Medical Data

To: _____     Inmate's Name: _Espinosa, Baldemar Jr._
   (Agency)

_____     D.O.B. : _6/8/68_     ID# : _576926_
   (Address)

                                         **Person Completing Form**

From: _Willacy County Unit 701_          Signature: _J Sabis RN_
   (Institution)
_1695 S Buffalo Drive Raymondville Tx_   Date: _11/6/96_
              _78580_
   (Address)
_(210) 689-4900_
   (Telephone)

---

**MEDICAL PROBLEM (S):**

TB Class ∅ 1995

Hx Seizures   1990

Suitable to transfer via: (Check one)

✓ Van ____ Ambulance ____ Other (Specify)

Allergies: _NKA_

Pregnant:

_N/A_   YES   NO   UNKNOWN

Other Lab Data:

---

**TREATMENTS / MEDICATIONS:**

Dilantin (phenytoin)  300 mg Daily

Phenobarbital  30 mg ÷ i  Tid x 90 &

Amitriptyline  50 mg ÷ i  Q.D.

        Last pill call x 30 days   9 PM

| TB Skin Test: | NEG | POS | Date _12/6/95_ |
|---|---|---|---|
| CXR: | NEG | POS | Date _____ |

| Test | | Treated | Date |
|---|---|---|---|
| RPR: | NEG   POS | YES   NO | _12/19/95_ |
| VDRL: | NEG   POS | YES   NO | _____ |
| GC: | NEG   POS | YES   NO | _____ |
| OTHER: _____ | | YES   NO | _____ |

WSH

# CLINIC NOTES
### TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

ne: _Espinosa, Baldemar_

CJ No.: _571926_

it: _DH_

| Date & Time | Notes |
|---|---|
| 3-6 155 ' 1 0 1996 | CID ICC Chart review _MDugan XisCID_ 1/2 DSCR to RWW RX supply **NURSE APPOINTMENT** 12-11-94 (at 43C) _C. Martinez SCC_ |
| -11-96 | (530 S) Request Antifungal cream. O) wt. 148#, P-80, R-18, BP- 120/71. some peeling noted on soles of ® + © foot. A) R/O Athletes foot. P) Tolnaftate cream 1% to feet topically B.I.D. x 14 days per protocol. ___ D. McKill (PA) |
| 3-12-96 | 1400 IM was called out after 1230 count ... ... Failed to appear. ___ |
| 16/6/96 1105 | Annual Exam / PPD ® forearm Med renewal ① Dilantin 100 mg. III PO 9am x 30d @ 2RF ② Phenobarbital 30 mg. PO TID x 30d @ 2RF ③ Amitriptyline 50 mg PO qd x 35d VOD. _Aua_ / MDugan Xis/CID |
| 7-9-6 ):00 | ® D.C. ELAVIL until ___ by psych. |
| 17-96 | 1500 IM called out for consult c ... ... ___ |
| -17-96 | 1800 IM did not show today. ___ |

ase sign each entry with status.

- 1 (Rev. 5/92)



# CLINIC NOTES
### TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

Name: _Espinosa, Baldemar Jr._

TDCJ No.: _57 69 26_

Unit: _DH_

| Date & Time | Notes |
|---|---|
| 1-27-96 | 0800 Received to DH Unit. ————— J. McKillip RN |
| 1-29-96 | 2345 S) walk in. c/o had a seizure in his cell. |
| | O) P-88, R-18, BP 145/95. verbalized |
| | having the feeling of an oncoming seizure. |
| | "NAUSEA, headache." Does not know if he had |
| | one. cell mate was out. Not witnessed. |
| | Appears somewhat drowsy, oriented x3. Perrl. |
| | Responds appropriately. small raised bump |
| | on Left eyebrow - thinks he hit his |
| | head on a drawer. ————— |
| | A) Seizure tx.; Raised bump on (L) eyebrow |
| | P) Ice pack to eyebrow now. Tylenol 650mg now. |
| | RTH. RTC prn if Sx. persist. —— D. McKillip RN |
| 1-29-96 2345 p.m | (late entry) 2345 offender Ambulated to clinic c difficulty, J. McKillip |
| C 02 1996 | 0905 S) R. 40 (H), back pain & HA? also jock itch. |
| reply DR APPOINTMENT | 12.3.96 @ 1230 —— A. Martinez LVN |
| 2/03/96 | 1400 (S) Mult c/o - back pain. |
| | (O) Refer to MD |
| | J. Ralston RN |
| 3- 96 | S- pt. 28 y o H ♂ c̄ |
| | O- (R) SHOULDER PAIN |
| | A- S/P MVA 11-94 |
| | (P) x- ray's (R) SHOULDER |
| | R/O Bony Pathology |

Name: _Espinosa, Baldemar Jr._

TDCJ No.: _57 69 26_

Unit: _DH_

# CLINIC NOTES
### TEXAS DEPARTMENT OF CRIMINAL JUSTICE
#### NURSE'S INCOMING CHAIN REVIEW

| | |
|---|---|
| DATE ENTERED TDCJ: _12-14-95_ | DATE RECEIVED THIS UNIT: _11-27-96_ |

IMMUNIZATIONS: D/T DATE: _12-14-95_ SKIN TEST PPD: DATE: _12-14-95_ RESULTS: _0 mm_

| | | | |
|---|---|---|---|
| TB | PROPHYLAXIS? | ☐ YES ☐ NO | DATE STARTED: <br> DATE TO COMPLETE: |
| TB | TREATMENT? | ☐ YES ☐ NO | DATE STARTED: <br> DATE COMPLETED: |

SEROLOGY DATE _12-X-95_ RESULTS: _non reactive_ HIV: ☐ NOT TESTED  ☐ REACTIVE  ☐ NONREACTIVE

| CHRONIC ILLNESS/DISABILITIES/CHRONIC CLINICS | HSM-18 AND MPL WERE REVIEWED FOR COMPLETION AND ACCURACY? ☐ Yes  ☐ No | | | | | |
|---|---|---|---|---|---|---|
| _Seizure disorder_ | P | U | L | H | E | S |
| | 3 | 1 | 3 | 1 | 1 | 1 |
| | C | A | C | A | A | A |
| | P | P | P | P | P | P |

TREATMENT/SPECIAL CARE/FOLLOW-UP/DIET/APPOINTMENT(s):




AUDIOLOGY: CLASS:

OPHTHALMOLOGY: VA:          GLASSES:          TEST/RETEST:

MEDICATIONS RECEIVED FROM SENDING UNIT? ☐ YES  ☐ NO

ALLERGIES: 1. _NKA_   2.        3.        4.

MEDICATION ORDERS:

| | |
|---|---|
| 1. _Phenytoin Na 100mg #ii QD_ | 6. |
| 2. _Phenobarbital 30mg i TID_ | 7. |
| 3. _amitriptyline 50 i QD_ | 8. |
| 4. | 9. |
| 5. | 10. |

LIMITATIONS:

WORK: _no climbing, no work around machinery & moving parts_

| | | |
|---|---|---|
| DISCIPLINE: _0_ | HOUSING: _0_ | BUNK: _0_ |

NURSE'S SIGNATURE: _T. Scott RN_   DATE/TIME: _11-28-96  0500_

PHYSICIAN'S SIGNATURE: _[signature]_   DATE/TIME: _12-2-96_

_11:00_

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

**Name:** Espinosa, Baldemar

**TDCJ No.:** 576926

**Unit:** DU - T

| Date & Time | Notes |
|---|---|
| 1-26-96 1400 | Received BC & D4. ——————— Scott RN |
| 1/27/96 0015 | Chart reviewed for transfer from BC to D4 unit. No x-rays sent. Dilantin 100mg. caps x 35 & Amitriptyline 50mg. caps 28 sent c̄ chart. Gardner RN |

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

Name: Espinosa Baldemar

TDCJ No.: 576126

Unit: ML

| Date & Time | Notes |
|---|---|
| 1-12-96 0530 | On Chain from ML to Fed Court          S. Hudspeth |
| 11-12-96 @ 1310 | Chained into ML from Fed. Court.          D. Vaughan   R |
| 11-15-96 | Chain out to DA CERT Dept Intake from CB from ML          MW |
| 1-18-96 1430 | Rec'd at DU          S. Johnson MA |
| 1-18-96 1430 | To clinic from B/D Hx of epilepsy - B/P 1/466 P-70 R-18 T-98.1 refer to MD/PA          S. Johnson MA |
| 1/18/96 2:40 pm | S- See above. had seizures (Grand mal) since 10 yrs old. last seizure 4 mos ago. |
| | O- Fair general appearance. PERLA & extra occular. Orient - alert appropriate. No gait. good balance |
| | A- Hx of seizure disorder Hx of depression — per MR |
| | P- 1) Dilantin 300 mg QAm 2) Phenobarbital 30 mg tid / X 3) Flexeril 30 mg QD  Body 4) Refer for psych. |
| 11/17/96 1:43 | |

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## INSTITUTIONAL DIVISION

HISTORY FROM MEDICAL RECORD

INMATE'S NAME _Espenoja, Baldemar_ # 57696 D.O.B. _6/8/68_

ALLERGIES: _NKA_ _____ PRESENTLY ON MEDS: YES / NO

PUHLES: _3 GP, 3 CP & 1A_ _____ HOLDS: MED: ____ PSY: ____ MROP: ____ PHOP: ____

CHRONIC CLINICS: _____

WEIGHT: _____ TEMP: _97°_ PULSE: _____ RESP: _16_ B/P: _____

## CIRCLE APPROPRIATE RESPONSE

**PHYSICAL OBSERVATIONS**

**GENERAL APPEARANCE**
Clean  Neat  Dirty  Disheveled

**SKIN**
Turgor — Good/Poor
Lacerations — Yes/No
Contusions — Yes/No
Bruises — Yes/No

**RESPIRATORY**
Breath Sounds — Clear/Wheezing
Dysnea — Yes/No
Cough/Congestion — Yes/No

**CARDIOVASCULAR**
Rhythm — Regular/Irregular
Edema — Yes/No
Chest Pain — Yes/No
Bleeding Tendencies — Yes/No

**GASTROINTESTINAL**
Distention — Yes/No
Constipation/Diarrhea — Yes/No
Nausea/Vomiting — Yes/No
Abdominal Pain — Yes/No

**GENITOURINARY**
Flank Pain — Yes/No
Burning/Frequency — Yes/No
Urination
Discharge — Yes/No

egnant — N/A — Yes/No
enses — Yes/No

COMMENTS REQUIRED ON ABNORMALITIES:
_Rt Shoulder pain_
_Rt side of head_

**NEUROLOGICAL**
1. Headache/Dizziness — Yes/No
2. Speech — Normal/Slurred
3. Pupils — Equal/Unequal
   Reactive/Nonreactive
4. Gait _unable to observe_ — Normal/Abnormal
   _see below_

**PSYCHIATRIC**
1. Orientation — Person/Place/Time
2. Coherence of Thought — Organized/Disorganized
   Processes — Logical/Illogical
   Obssesive/Delusional
3. Emotional State — Social/Withdrawn
   Agitated/Listless
   Anxious/Fearful
   Negative/Childlike

**MUSCULOSKELETAL** _unable to observe_
1. Range of Motion _in in_
2. Upper Extremeties _shakel_ — Normal/Limited
3. Lower Extremeties _handcuffed_ — Normal/Limited

CLEARER FOR AD. SEG. — Yes/No

REFERRED FOR FURTHER EVALUATION

Psych. Services _____ M.D. _____

EXAMINER: _Karen Wheeler_ TITLE: _LVN_

DATE: _11/6/96_ TIME: _0030_ A.M./P.M.

ALL FORMS MUST BE CONTERSIGNED WITHIN
SEVENTY-TWO HOURS

PHYSICIAN: _____

DATE/TIME: _11/6/96_ _0800_

PRE-SEGRECATION HEALTH EVALUATION

017

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 45 of 72



# PROGRESS NOTES

SITE: _Willa___

NKA

| Date / Time | Inmate Name _Garcia or Baldena_ # 576926   D.O.B. _1-18-76_ |
|---|---|
| 11-4-96 | 2030 I/M c/o dizziness state "I feel like I am going to have a seizure. VS of 126/80 P-88, R-20 - T 97.5 I/M breathing fast, c/o of tingl. in hands, instructed I/M to take a deep breath, hold it and release it slowly I/M medicated c Dilantin 100mg X 3, lying on stretcher in TX rm side rails up X 2 8X8 I/M breath slower Resp 16 c present ___ K Lindsr |
|  | 2130 I/M states "I feel much better, no longer c/o tingl. in upper extremities back to housing. Given no complaint ___ K Lindl |
| 11-06-96 | 0030 Ad-Seg physical completed except for weight, pulse & BP, I/M in padded cell c handcuffs behind back, legs shackled I/M sitting on floor C/o pain to Rt shoulder & R side of head. |
| 11/7/96 | 1100 Rec'd at Au, Surg Cons ↑ |
| 11/7/96 | 1135 Nurse screened meds noted ___ S Gnsel R |
| 11/8/96 (0001) | one Ch Dest MI 103 Sed Court c med ___ TM Hunbeck Inc |
| 11/8/96 | 1030 Rec'd MI ext Fed Court ___ A Blackwell Jr |

2 4470

018



# PROGRESS NOTES

**NKA**

SITE: _Willacy_

| Date / Time | Inmate Name _Espinosa, Baldemar_ # 576926 | D.O.B.: 6:1/8 68 |
|---|---|---|

10/29/96
2³⁵ pm

wt 145# T- 97.8   P- 72  R-14  BP ¹¹⁰/60

28 yo ♂ comes w c/o ® shoulder intermittent aches, which he attributes
to BVA '94; Adds having headaches /overwhelming stress.

Alert/ambulatory, Ø Distress

Neck: Ø JVD/Ø meningeal signs     10/4/96 ⟩ Dilantin level 14.3 ug/ml (NL 10-20)
Full ROM                                          ⟩ Phenobarbital 18.3 ug/ml (NL 15-40)

Lungs: CTA      Heart: S1S2, RR, Ø S3, S4

Abdom: soft, ⊕ BS's NA, Nontender to palp.

Ext: ⊕ Right shoulder crepitus on ABduction/ADDuction c minimal tenderness to palp
     Ø deformities, Ø effusions

Neuro: Ø seizures / tremors
       Mood - Minimally flat

A. 1). seizure disorder - stable          P- 1) Rx/ Amitriptyline 50mg i QD,
    + Mood disorder                                                      Last pill call X 30
                                    passed
 2) ® shoulder - post trauma Arthralgia  given    Dilantin 100mg (3) po QD AT 7 PM
                                        A↓                                    X 90
                                                  Phenobarbital 30 i TID X 90 D

                                              2) Recombulate Reinstate 4 WKS

                                          ✓ 3) Please schedule c Counselor
                                               for stress management

                                          ✓ 4) Please schedule X-ray ® shoulder
                                               (11/21/96) Asst MD
                                                           A Lantern

                                          Tel 10/23/96 1515 Ryan MD

verified 10.23.96 335pm Lou Ann Veeken RN.
10/29/96
1830    Rec'd a call from Supply about this inm requesting a sweatshirt.
        There is no reason (Medical) @ this time for a sweatshirt.
                                               Martha Asneros, LVN

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
HEALTH SUMMARY FOR CLASSIFICATION

NAME: ESPINOSA,BALDEMAR JR.          DOB: 06/08/1968        P U L H E S
TDCJ#: 576926    SID#: 03771484      WGT: 159 LBS           --------------
UNIT: WI        HOUSING: H1D-050     HGT: 5'03"             |3|1|3|1|1|1|
JOB: HSG JANITOR H1 10P-6A                                  |G|A|C|A|A|A|
                                                            |P| |P| | | |
                                                            --------------

I.  UNIT OF ASSIGNMENT (CHECK ONE)
    X  A. NO RESTRICTION                  __ E. BARRIER-FREE FACILITY
    __ B. REGIONAL MEDICAL FACILITY       __ F. SINGLE LEVEL FACILITY
    __ C. EXTENDED CARE FACILITY          SUITABLE FOR TRUSTEE CAMP ASSIGNMENT?X YES__NO
    __ D. PSYCHIATRIC CARE FACILITY       SUITABLE FOR SAIP FACILITY?           X YES__NO

II. HOUSING ASSIGNMENT
A. BASIC HOUSING (CHECK ONE)             B. BUNK ASSIGNMENT (CHECK ONE)
    X  1. NO RESTRICTION                  __ 1. NO RESTRICTION
    __ 2. SINGLE CELL ONLY                00 2. LOWER ONLY
    __ 3. DOUBLE CELL ONLY
    __ 4. SPECIAL HOUSING (HOUSING WITH   C. ROW ASSIGNMENT (CHECK ONE)
          PATIENT WITH LIKE MEDICAL CONDITION   X  1. NO RESTRICTION
    __ 5. CELL BLOCK ONLY                 __ 2. GROUND FLOOR ONLY

III. WORK ASSIGNMENT/RESTRICTIONS (CHECK ALL THAT APPLY)
    __ 1. MEDICALLY UNASSIGNED            __ 15.NO FOOD SERVICE
    __ 2. PSYCHIATRICALLY UNASSIGNED      __ 16.NO REPETITIVE USE OF HANDS
    __ 3. SEDENTARY WORK ONLY             __ 17.NO WALKING ON WET UNEVEN SURFACES
    __ 4. FOUR HOUR WORK RESTRICTION      __ 18.DO NOT ASSIGN TO MEDICAL
    __ 5. FOUR HOUR LIMITED WORK RESTRICTION __ 19.NO WORK IN DIRECT SUNLIGHT
    __ 6. EXCUSE FROM SCHOOL              __ 20.NO TEMPERATURE EXTREMES
    __ 7. LIMITED STANDING                __ 21.NO HUMIDITY EXTREMES
    __ 8. NO WALKING > ___ YARDS          __ 22.NO EXPOSURE TO ENVIRONMENTAL POLLUTANTS
    __ 9. NO LIFTING > ___ LBS.           __ 23.NO WORK WITH CHEMICALS OR IRRITANTS
    __ 10.NO BENDING AT WAIST             __ 24.NO WORK REQUIRING SAFETY BOOTS
    __ 11.NO SQUATTING                    00 25.NO WORK AROUND MACHINES WITH MOVING PART
    00 12.NO CLIMBING                     __ 26.NO WORK EXPOSURE TO LOUD NOISES
    __ 13.LIMITED SITTING                 __ 27.NO WORK REQUIRING COMPLEX INSTRUCTIONS
    __ 14.NO REACHING OVER SHOULDER

IV. DISCIPLINARY PROCESS (CHECK ONE)
    X  A. NO RESTRICTIONS
    __ B. CONSULT REPRESENTATIVE OF MENTAL HEALTH DEPARTMENT BEFORE TAKING DISCIPLINARY ACTION
    __ C. CONSULT REPRESENTATIVE OF MEDICAL DEPARTMENT BEFORE TAKING DISCIPLINARY ACTION

V.  INDIVIDUALIZED TREATMENT PLAN (CHECK ALL THAT APPLY)
    X  A. NO RESTRICTION                  __ C. PSYCH REPRESENTATIVE REQUIRED
    __ B. MEDICAL REPRESENTATIVE REQUIRED

VI. TRANSPORTATION RESTRICTIONS (CHECK ONE)
    X  A. NO RESTRICTION                  __ C. WHEELCHAIR VAN
    __ B. EMS AMBULANCE                   __ D. VAN (SOUTHERN REGION ONLY)

GEORGE CANTU M.D.  MEDICAL DI   10/23/1996   _____
PRINTED NAME AND TITLE OF REVIEWER   DATE        SIGNATURE OF REVIEWER

HSM-18(REV.11/95)



# PROGRESS NOTES

SITE: _Willacy_

*NKA*                        576926

| Date / Time | Inmate Name  Espinosa, Baldemar  #  758926        D.O.B.: 6 / 18 / 68 |
|---|---|
| 10/8/90 | 1315 Refused admission To Ad Seg physical Quiet orientated x3 - †Quthen R N |
| 10-20-96 | ↑ Out of Ad Seg - H + P done - B. Rodriguez WN |
| 10-20-96 | 18:10 p - S - % pain to Rt. shoulder - Hx of |
| #7596 | MVA injury 2 yrs. ago - O+A - States pain |
| noted LVN  BR 10-24-96  10-18-26 | shoots down Rt. arm sometimes - Wt. 145lbs. 98³ - 84 - 14 - 110/70 - P - Will schedule to see a doctor for re-evaluation 10-24-96 B. Rodriguez LVN — |
|  | Verified 10/20/96. 1915 H. Clark L |
| 10/21/96  0815 | Call in because he did not come To pill window for 4:00 Am Phenobarbital Im refused To Take med - became verbaly abusive - asked To sit in lobby until ready to take med - †Quthen R N |
| 10/21/96  0830 | Took med phenobarbital 60 mg - Dr. Teran notified of dose error error. Im may go home VO Dr. Teran / †Quthen RN, Josue Teran |

CUsPDF — www.fineizo.com

# PROGRESS NOTES

SITE: Willacy

| Date / Time | Inmate Name Espinosa Baltazar # 570920 D.O.B.: 6/18/1968 |
|---|---|
| 10/8/96 0530 | T 97.7 P. 80 R. 18 BP 120/70 WT. 148lbs |
| | S) F.U. Pb + Dilantin blood level |
| | O) P.E. Normal - |
| | Dilantin B.L. 14.3 ug/ml - |
| | Phenobarb - B.L - 18 ug/ml - |
| | A) ① Seizure disorder stable |
| | ② Blood levels W.N.L. |
| | P) ① Cont. Dilantin + Pb at present dose x 90 d. |
| | [signature] |
| | Noted 10/8/96 0930 [signature] RN |
| 10-8-96. | 1020 A.M. S - "My shoulder hurts. I hear a popping sound." O - able to raise arm to shoulder level bilaterally, no evidence of discomfort. A - Inmate had been in hallway removing his shirt, refusing to follow orders, behaviour disruptive. Brought to medical by A/W Rodriguez, A/W [illegible] and Major Villanueva. P - met with inmate and stressed need for inmate to follow rules, that this behaviour would not expedite any medical issues. Explained that he had tylenol on housing available for discomfort, refrain from recreation. Put in a sick call if pain continues after using tylenol as informed. Inmate left with A/W Rodriguez and Major Villanueva. — [signature] RN. |
| | 10/8/96 1305 Verified [signature] RN |

Verified 10/8/96

WCC 74470



# PROGRESS NOTES

SITE: _Willacy_

| Date / Time | Inmate Name  Espinosa, Bartlemn   # 576722        D.O.B.: 6/28/62 |
|---|---|
| 9/17/96 | Phenobarbital 30 mg 15 tabs ordered from Watson's City Drug (local pharmacy) — NCisneros, L per Dr. Cantu                         noted NCisneros, L |
| 9/18/96 | 0350 Blood drawn for Dilantin level on plain Red Top Test Tube. —————— J Salinas RN |
| 9/19/96 0250 | Wt. 144  128/76  84  14  97⁸ |
| noted | S) P.V — Bursitis of Rt = Shoulder Treated c Vielma ____ wrap, Ibthen mecher + Rest X 10 days _____ this from |
| NCisneros, LVN 9/19/96 | O) Full R.O.M = no tenderness knee a Crinia. |
| V808 | A) Resolved Bursitis of Rt = Shoulder _____ knee ____ |
| 9/11/96 09/09 | P) No further Rx for their problem ② A/F Cream Rtd X 2 Wks. _____ ____ |
| 9/24/96 0430 | Medical officer contacted Housing, 1 X 3 to have inmate escorted to medical for A.M. pill. Inmate did not show _____ Joe A. Brown w |
| 10/1/96 1025 | 126 Dilantin + Phenobarbital level Than schedule To see Dr. Teran 10-2-96 V/o Dr. Teran / F Cutts Rt |
| noted 10-1-96 | Verified c Orders x 10-1-96 @ 1400  Joua Tes |
| 10/2/96 | 0400 Collected Blood in plain Red Top Test tube for Phenobarbital and Dilantin level — J Salvin RN |
| 10/4/96 | Dilantin Level 14.5 Pb- level 18.3 Will cont c same Rx _____ Joua Teran |

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 51 of 72



# PROGRESS NOTES

SITE: __Willacy__

NKA

| Date / Time | Inmate Name: Espinosa, Baldemon 576976     D.O.B: 6 18 18 |
|---|---|
| 9/7/96 | SCR — no show                          Joe G Brown |
| 9/7/96<br>2100 | 1) Inm fell in yard and injured his @ shoulder<br>2) Poor ROM arm noted on raising arm upor to the front<br>3) Alt in comfort<br>P) 1) ~ Tylenol 500mg II Tabs Po now (given)<br> 2) Place arm in sling until seen by MD (given)     Verified 9/7/96<br> 3) Place on Medical lay in until seen by MD   C/Willz 320CCrs<br> 4) Schedule c MD for Eval. 9-9-96<br>                                        H. Clark<br>noted 9/7/96 2130 H Clark |
| 9/9/96 | Wt 146#   T 97.7 P-60 R-12 BP-120/80<br>S) 23 y.o. male c chronic pain<br>on RT shoulder for past<br>2 years - on L off ... car<br>accident ... that day<br>another I.M. on 9/7/96<br>... pain ...<br>1) Decrease Range of motion<br>c painful during passive<br>manipulation<br>A) Bursitis of RT shoulder<br>P) 1) Methocarbamol 500 mg<br>TID x 10 d<br>2) ... sling for ...<br>3) ... 10 mg<br>Bid x 10 d<br>4) Med lay in x 10 d<br>5) R ... eval in 10 d      (9/9/96) |

WCC 74470

9/9/96 Above orders verified MCosneworth   noted 9/9/96 0945 —   12 20

024

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 52 of 72



WACKENHUT CORRECTIONS
Design · Construction · Financing · Management

# PROGRESS NOTES

SITE: _Willacy_

NKA

| Date / Time | Inmate Name Espinoza, Baldemar # 576926     D.O.B.: 6/18/68 |
|---|---|
| 8/11/96 0710 | Update Phenobarbital 60mg po @ PM & Phenobarbital 30mg @ AM x 30 days per order of Dr Cantu. / Lisa Gullis LVN |
| 7·16·96 4:10pm | V.O. Continue Dilantin 300 mg. p.o. Q.D. as ordered by Dr. Dieu. 7/29/96 _Laura Tenn_ _Laura Gullis R.N._ _Laura Gullis R.N._ |
|  | mail 8/4/96 H. Clark |

7/_/96 0820   Wt. 143   120/80   74   16   98²

S) 28 y.o. male c̄ Epilepsy stable.

O) P.E. W.N.L.

A) Epilepsy Under Control

P) ① Pb 30 mg. at 4:30 A.M. } X 90d
② 60 " at 4 P.M.
② Dilantin caps - 300 mg q̄ d X 90d
③ Have get Dilantin & Pb
blood level in 1 month.
④ Re-eval in 2 months.
_Laura Tenn_
_Noted 8/19/96 0925_

7/_/96   Medical appt - No Show. Medical officer
contacted Housing 3 times — _Jodi Brown_

_/96   Refused service became verbally abusive
when questioned about problem & compliance
to medication regimen. - Martha RN

_/96   9:30 AM Linden? showered and Shampoo (for possible scabies)
contact. V.O. Dr. Dieu. /Laura Gullis RN
_Laura Tenn_

14470

025

CutePDF · www.fasisa.com



# PROGRESS NOTES

SITE: _W-1_

| te / Time | Inmate Name Espinosa, Baldemar #576926    D.O.B.: 6 APR 6 |
|---|---|
| -12-96 | 2100  Took  his  Meds  ① Lantin Phenobarb – Elavel about oriented – JE Joseph |
| 13-9 | 2100  Up & about  first  put into padded dry cell as on intake  flooded other cell – Watched as he swallowed Dilantin – Phenobarb & elavel  ﹍ |
| 16.96. | 4pm  V.O. Dilantin 300mg  P.O.  X 30 days – ordered  To be reassessed by Dr. Carter. John Jeremiah  V.O. Dr. Carter / ﹍﹍ Keller RN / H.S.A.  7/14/96  635 Verified  ﹍ RN |
| 12/96 | REQUESTING MEDS FOR BACK PAIN. REPORTS MOTRIN 800mg TID DOES NOT WORK. WILL REFER TO M.D. FOR REEVAL OF MEDICATION. – M Cisneros, lvn |
| 2/96 | 1140  Wt. 144   120/74   80   16   97⁸  S/ 28 y.o.  male.  c Hx. of Inhalant & abuse  seen by Dr. Jeremiah & recommended Elavil 50mg X 2 Wks & then increase to 100 mg. at H.S.  O/ P.F. Unchanged from before.  A/ ① Seizure disorder stable  ② Inhalant abuse –  ③ Chronic headaches –  P/ ① Cont. c Dilantin & Pb as per 7/5/96  ② Increase Elavil to 100mg. P.O. q.d. at H.S.  X 60d  ③ Re-eval in 1 month –  ④ Please get several shirt for him  John Jeremiah O. |

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 54 of 72



# PROGRESS NOTES

SITE: _Willacy_

_N K A_

| Date / Time | Inmate Name _Espinosa, Baldemar_ # _570962_     D.O.B.: _6 1/8/68_ |
|---|---|

07/09/96
7PM

2840 8" IN AD-SEG, Refusing to comply with Medications, Despite explaining importance
of medications; Also Refuses to Talk/Respond to Questioning, instead looking at ceiling.
Has thrown food against Door/Windows & All over floor; Has also refused to eat
or drink water; Multiple attempts made to communicate But Refusing to
Acknowledge our presence/Questioning - No Seizure activity noted; Moving
All limbs As well as Head/eyes; Exam limited due to Patient's Refusal.

Evaluation/Review of labs (7/5/96)                    _M Cantu MD_

CHEM 24 : 139/103 11        T. Bili 0.5    Alk phos 157
          4.0/       0.8  ᵇᶜ   GGT 505      LDH 177    Albumin 4.4  A/G 1.3
                              SGOT 50
                              SGPT 9.5     T. protein 7.7   Globulin 3.3  Calcium 9.5
CBC:                                                        Phosphorus 3.9
          WBC 4.5                                          Iron 86
          Hemoglobin 16.3   Mcv 88                          Chol. 146
          Hemocritt 4.8     MCH 30.6                        Triglyceride 66
                           Platelet 200,000

Vit B₁₂ 668
Folic Acid 5.5            Dilantin 11.2 Mcg/ml
                          Phenobarbitol 11.5 Mcg/ml

To get Psychiatric evaluation: Monitor/continue to
encourage compliance Meds/food/H₂o intake.        _M Cantu MD_

-10-96-   Li AM - I.m Refusal medication - I.m sitting on floor ē head between knee & no
response to verbal command via officer to prisoner come to door to offer medicatn.
explain Importance of medication & encourage to voice any discomfort or distress
so as to communicate ē Dr. - in Reference to a better tx. - I.m did look at me
& no facial Grimace noted - strong stare noted & place head between knee
& resting on top of both arm crossed.              _L Rivas_

1/10/96   Hx had H/o Headache & Inhalant Abuse &
          Marijuana Abuse
BP 11.V.D.21
   19.2°1   Elavid   50   mg m/ H.S. × 30 day/.
          Psych Eval Ordered.
noted Lisa Willis Lvn 7/10/96 @ 1835        _nb.   au_

:C 74470



## PROGRESS NOTES

SITE: _Willacy_

NKD

| Date / Time | Inmate Name Espinosa, Baldemar # 576962   D.O.B.: 6/18/64 |
|---|---|
| 7/8/96<br>1180 | O) Pt ∵ alert, active, not<br>drowsy & walking well<br><br>A) ① seizure disorder stable<br>② confusion ↓ back, resolved<br><br>P) ① Cont. ∵ same dose of Dilantin<br>& Pb as ordered on 7/3/96<br>② Cont ∵ Motrin as ordered 7/5/96<br>③ Re-eval in 30 d = 8/9/96<br>[signature] Teresita ( ) |
| 7/9/96 1145 | I/M refusing medication @ this time. I/M is kicking<br>door, throwing H₂O out hatch door when it was open.<br>I/M has put TP on window so as not able to see<br>in. Major in to talk to I/M & I/M attempted to urinate<br>on Major. [signature] |
| 7-9-96<br>300 | Called To Adseg To do physical exam on IM<br>Transfer from cell To padded cell - stand ∵<br>shorts on facing window - did not respond<br>when name called or talked To - after 5-6<br>min. walked Toward door & sit down on floor<br>Took off shorts & pushed them down drain<br>Than wiped floor & wall ∵ wet shorts- did<br>not respond to name called or being<br>Talked with. [signature] R N |
| 315 | left inmate stand in cell ∵ wet shorts<br>on look Toward back wall [signature] R N<br>Jane Tomilson counselor notified per phone<br>message left on answering machine.<br>[signature] R N |

C 74470

028



# PROGRESS NOTES

SITE: _Williamy_

_NKA_

| Date / Time | Inmate Name Espinosa, Baldemar   # 576926 | D.O.B: 6/8/168 |
|---|---|---|

1-5-96
9:30 AM

V.2 - 158/88 - 78 - 18 - Fell from Top bynk. % of mid back pain -

S) 28 y.o. male c̄ hx. of seizure disorder since 1990. On Dilantin. Had a seizure & fell from bunk.

O) At present time pt. is alert & active but complains of back ache but able to walk & move.

A- ① Contusion to back.
② Seizure disorder.

_noted_
_1-5-96_

09:30

P- ① Motrin Tabs - 800 mg - P.O. TID x10d
② Cont c̄ Dilantin 300 mg P.O. qid.
③ Pb. 30 mg - in A.M. & 60 mgs. at P.M.
④ May go back to housing.
⑤ Softer drink only.
⑥ Re-eval in 1 WK 7-12-96
                    _Jose Teran M.D._

1/5/96   1705   I/M refused H+P for Ag. Seg. Clearance.  _L.Galindo RN_
Officer Gonzales present

1/8/96   VS. 110/68  78  16  98°   Wt- 140 #
1145

S) 28 y.o. male c̄ hx of seizure disorder did have a seizure 7/5/96 & fell down & did hit his back.

(over)



# PROGRESS NOTES

SITE: <u>Willacy</u>

NKA.

| Date / Time | Inmate Name Espinosa, Baldemar        # 576926          D.O.B: 6 /18 /68 |
|---|---|
| 1/5/96 0045 | A. Alt. in comfort R/T Pain, Alt in Concious level R/T seizure<br>P: DiContinue Epival: Rx: 1) Motrin 800mg now.<br> 2) increase Phenobarbital to 30 mg $\bar{q}$ Am and 60 mg $\bar{q}$ Pm.<br> 3) Lab work: CBC, Chem 24, Dialantin level, Phenabarbital level, Vit B12 and Folic acid.<br> 4) Place in infirmary and monitor V/s and Neuro checks $\bar{q}$ 1° until stable and Concious level back to normal, then $\bar{q}$ 4° until seen by MD in Am.<br>To Dr. Conte/H. Clark      Conte MD |
| 1/5/96 0130 | I/m checked V/s stable, neurochecks all WNL ———— H. Clark |
| 1/5/96 0230 | I/m sleeping, V/s stable, all neuro checks WNL, alert, oriented x 3,<br>H. Clark |
| 1/5/96 0330 | I/m resting quietly, $\bar{c}$ no further problems noted. V/s remain stable, neuro check all WNL, blood drawn for labs, I/m voices no distress at this time ——— H. Clark |
| 1/5/96 0430 | I/m resting quietly, voices no complaints at this time. V/s remain stable. Neuro checks remain WNL. ———— H. Clark |
| 1/5/96 0630 | I/m has rested quietly thru the night $\bar{c}$ no further problems, voices no complaints at this time. V/s remain stable. neuro checks remain WNL. ———— H. Clark |
| 1/5/96 1130 | S in medical observation - fall from bunk c/o pain mid back<br>O A&O awake alert oriented x3. moves all extremities well. ambulated to BR. c/o pain mid back v/s 10°/12 96/8<br>P Cont $\bar{c}$ medical observation - shower per self.<br>T. Austin R.N. |



# PROGRESS NOTES

SITE: __Willacy__

NKA

| Date / Time | Inmate Name Espinosa Baldemar # 576926 | D.O.B.: 6/8/68 |

-27-96 — 8²⁵ pm — S — Seen in Ad. Seg. — c/o sore throat, runny nose, cough, chills, Took Tylenol ↑ BRft. today —

O & A — Eyes are red — chills — cough — yellowish mucous when blowing his nose — 98⁸ 80 - 16 - 120/80

P — Will call him in to see a doctor - today - B. Lodging in

-27-96 — VS — 120/80  98⁶ 88 20      wt 145 #
9 45

S) 28 y.o — male c̄ sore throat ē cough for 3 - 4 days.

O) Edema & Erythema of throat no pus seen, lungs are c̄ mucous rales but no crepitant rales heard

noted
A) U.R.I.

P) ① Hytuss Tabs II P.O. Tid c̄ X 10d
② Amoxil caps - 500 mg - ī Tid X 10d
③ Re-eval in 10 d    7/1/96

07/03/96  Phenobarbital level 6.5 mcg/ml
M Cantú RN

3/96  BP 112/84, P 84  R 20.
045  Code blue, Arrived at 0045 H1B12; Arrived on H1 @ 0050;
IM laying on floor; CO's advise he fell off top bunk;
IM able to move both feet & legs; both arms; c/o HA
S) Possible seizure ē fall from top bunk.
O) Physical exam reveals no contusions or break in skin head to toe
eyes PERLA, VS stable ē labored breathing, BSFS 63, semi alert
ē complaint of headache

74470

cont ↓



**WACKENHUT CORRECTIONS**
Design · Construction · Financing · Management

# PROGRESS NOTES

SITE: _Willacy_

N.K.A.

| Date / Time | Inmate Name Espinosa, Baldemar # 576926 | D.O.B.: 6|8|68 |
|---|---|---|

6/13/96 0845   MD Sick Call,   wt = 146 lbs,   VS = 130/80 · 80   16  97°

S) 28 y.o. ♂ c̄ Hx of seizure disorder since 1989. On Pb. 30 mg. b.i.d. &
Dilantin 400 mg. q.d.
Last Dilantin Blood level done on 4/26/96. was 12.5.
Dr Cantu did see pt. on 6/11/96 & did order Dilantin & Pb.
blood level. & Cont. c̄ Dilantin & Pb.

O) P.E. Completely W.N.L.

A) ⊕ Seizure disorder
stable c̄ Pb. & Dilantin

P) ⊕ Cont. Pb. 30 mg. b.i.d. X60 d.
⊕ Dilantin cap. 100 mg. 4 qt H.S. X60 d
⊕ Will call pt. when lab work is back.

6-13-96   T/O Dr Cantu (R.N. N)   Dilantin level (6/12/96) 21.6 Mg/Ml
                                   Pb 11.5 Mcg/Ml
1930   Decrease Dilantin to 300mg Qd
And will repeat phenytoin level in 2 wks.
Noted Tasha T. — 06-13-96 1900   M Cantu

Verified J.A. 6/13/96 1900

6-25-96   Cleared for AD Seg per Physical observation &
1855   history Alberts R.N. —

C 74470

032

(

## WACKENHUT CORRECTION - WILLACY UNIT
### NURSE PROTOCOL/TREATMENT PLAN

Name: _Espinosa, Baldemar_ TDCJ #: _576926_ Date: _6-12-96_ Time: _1035_

Housing: _H 3 A 32_    Work Assignment: _Hsg. janitor_

### HEADACHE

Circle all items that are appropriate and/or complete all blanks.

**HISTORY**

1. Head trauma in last week _inj. 11/94 (car accident)_ (N)/Y

2. Neurologic problems:
   - Weak _____ (N)/Y
   - Dizzy _____ (N)/Y
   - Confused _____ (N)/Y
   - Syncope _____ (N)/Y
   - Seizures _____ (N)/Y
   - Numbness _____ (N)/Y

3. Nausea: (N)/Y

4. Vomiting (N)/Y
   - Frequency
   - Color
   - Amount

5. Pain: Onset _11/94_
   - Location _frontal + behind eyes_
   - Duration _couple of minutes_
   - Frequency _off + on_
   - Intensity _severe @ times_

6. Associated symptoms:
   - Ear pain (N)/Y
   - Facial swelling (N)/Y
   - Sinus congestion (N)/Y
   - Rhinitis (N)/Y

7. History of similar problems (N)/Y
   Resolved by: _____

8. Current medications:
   _Dilantin + Pb._

9. Allergies: Food, drugs, other _NKA_

**PHYSICAL ASSESSMENT**

1. T _98⁵_ P _76_ R _18_ B/P _123/90_

2. Facial swelling (N)/Y

3. Able to touch chin to chest: N/(Y)

4. Level of consciousness:
   (Oriented)  Confused

5. Gait: (Steady)   Unsteady

6. Abnormal neurological symptoms:
   Describe _____ N/Y

7. Skin: Warm (Hot) (Cool) Dry
   Diaphoretic

8. Respiration: (Normal)  Labored
   Shallow   Deep

9. Visual Acuity
   Rt. Distant ____ Near ____
   Lt. Distant ____ Near ____

Comments: _____

_____ (6/13/96)

X  Protocol not used

_C Clark rn_          _6/12/96_
Nurse Signature          Date

_____ MD

033



# PROGRESS NOTES

SITE: _Willacy_

| Date / Time | Inmate Name Espinoza, B. | # | D.O.B.: 06/08/68 |
|---|---|---|---|

N.K A

**6/11/96 8558** 28 y.o. ♂ comes in for eval of episode – gen. weakness/weakness, after basketball. This afternoon: AT present time, Asx. Compliant ē seizure meds; last seizure 3/96
Alert, Ambulatory, in acute distress
Neck: ⊖ JVD  Lungs: CTA  Heart: S₁ S₂ Sₒ RR
Abdom: soft ⊕ bs in 4q, Nontender to palp
Ext: ⊖ edema          EKG NSR
Neuro: intact, ∅ tremors/seizures

A) 1) Seizure Disorder

P: 1) Please get Phenobarbital 30mg i BID x 60D – Stark
Dilantin 100mg 4 QD x 60D ordered
√2) Get Phenobarbital & Phenytoin levels – in Am   done
√3) Medical lay in x 3 days
√4) Encouraged to drink plenty of fluids
√5) Reevaluate in 1 wk
√6) No Recreation x 1 wk  6-19-96
Noted Lisa/Willis RN 6/11/96 2200   M Centeno

**3/96 1035** 5) "I keep having H/A's since my accident 2 yrs ago" See protocols – will seked ē M.D 6/13/96 – L Clarke RN
e# 3351



**WACKENHUT CORRECTIONS CORPORATION**

## HEALTH SERVICES INCORPORATED

**PROGRESS NOTES**

ALLERGIES: _NKA_          SITE _Willacy_

| | |
|---|---|
| INMATE'S NAME: _Espinoza, Baldemar_   TDC # _576924_   D.O.B. _6/8/68_ | |

| DATE / TIME | |
|---|---|
| _/96  1020_ | INCOMING CHAIN: RECEIVED AT Willacy FACILITY VIA CHAIN BUS. ORAL HYGIENE INSTRUCTIONS. MEDICAL SERVICES INFORMATION AND AIDS MATERIAL GIVEN TO INMATE. |
| | MENTAL HEALTH NEEDS: _none_ |
| | DENTAL COMPLAINTS: _none_ |
| | ALLERGIES: _NKA_ |
| | APPEARANCE/BEHAVIOR: _neat + cooperative_ |
| | EVIDENCE OF ABUSE/TRAUMA: _none noted_ |
| | RELEASED TO GENERAL POPULATION: YES      NO:      OTHER: |
| | TEMP:      PULSE:      RESP:      B/P:      WT: |

Released to gen. pop. c̄ ō complaints. C̄ Chart in
| _0/11/96_<br>_1350_ | Central Control called about Inmate c/o chest pain out in rec. yard. Inmate found lying on bench @ basketball c/o upper ① chest pain ī pain radiating to ① arm, no c/o SOB or pain or pain radiating to jaw area ——— Jco regular |
| _11/96 1352_ | I/M c/o both hands tingling, a swallowing + et states that this is an aura usually before he has seizure. I/M very diaphoretic. Limited VS = 140/90 P 84. I/M taken by WC to the Medical Cell room — O₂ @ 2 L per min. applied, EKG prepared + run. |
| _x61432)_ | I/M states is □ feeling better. face is red but not recently or diaphoretic. I/M admitted to ward to be seen by Dr. Canter when he comes in his said call. |
| _-11-96 —_ | 16:50 p — S — Continued observation in med. ward.<br>O+A — No distress — states he feels much better —<br>is more relaxed — 97⁴ - 76 - 14 - 100/70<br>P — To be seen by a doctor later — B. Rodriguez LVN |

035

Espinoza, Baldesa

AGE: 27

#: 576926

SEX: M

Willacy

D.O.B. 6-5-68

**TDCJ-INSTITUTIONAL DIVISION**

**CLINIC NOTES**
NURSE'S INCOMING
CHAIN REVIEW

| & Time | | |
|---|---|---|
| 1010 | ALLERGIES: NKA | |

DATE ENTERED TDCJ-ID: 12-14-95     DATE RECEIVED THIS UNIT: 8/4/96

IMMUNIZATIONS:  DIPHTHERIA/TETANUS          DATES: 12-14-95

PPD DATE: 12-16-95     RESULTS: 0 mm

TB CLASS    PROPHYLAXIS:    YES:    NO: ⟩
DATE COMPLETED:
DATE TO COMPLETE:

TREATMENT: ——
DATE COMPLETED:
IN PROGRESS:

SEROLOGY DATE: 12-18-95     RESULTS: NR

| | P | U | L | H | E | S |
|---|---|---|---|---|---|---|
| INDICATES DESIGNATOR | 3 | 1 | 3 | 1 | 1 | 1 |
| INDICATES CODES | G | A | C | A | A | A |
| INDICATES MODIFIERS | P | P | P | P | P | P |

CHRONIC ILLNESS/DISABILITIES: Epilepsy - seizures     ADD TO CHRONIC CLINIC: yes

MEDICATION ORDERS:
1. Phenobarb 30mg. ī BID x 30 d. @ a.m. + HS
2. Phenytoin Na. 100mg. x IV tabs. d. @ HS
3.                    8.
4.                    9.
5.                    10.

TREATMENT/SPECIAL CARE/FOLLOW-UP/REFERRALS: Dilantin + Pb. levels

WORK LIMITATION: no climbing, O wk. around machine or moving parts

HOUSING & BUNK LIMITATIONS: lower bunk

NURSE'S SIGNATURE: C. Clark RN

PHYSICIAN'S SIGNATURE: Joma Torres

036

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 64 of 72

# CLINIC NOTES
## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### INSTITUTIONAL DIVISION

Name: _Espinoza Baldemar_

TDCJ No.: _576926_

Unit: _____

| Date & Time | Notes |
|---|---|
| 5-27-96 0800 | PB 30 mg given po ——— R. McElroy LV |
| 5-28-96 1930 | went to dorm to medicate. offender refused to show pass to verify medicate Requested 2X's to see med pass and still refused ——— Brewer LVN |
| 1930 | C/o seen present at the time of the incident ——— Brewer LVN |
| 5-28-96 | Phenobarbital 30 mg i po bid X 30d Dilantin → Phenobarb disc |
| 5-29-96 2000 | orders noted medication to be put on computer ——— per order [signature] LVN |
| 5-29-96 2030 | SCR# 1566 C/o arm pain & H/A Schedule for MD ——— [signature] |
| 6/4/96 0200 | Clin out to Willacy from WH. Med noted. BMan |
| | |
| | |

sign each entry with status.

037

1 (Rev. 5/92)

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| WACKENHUT, INC., CORP., | § | CIVIL ACTION B-96-160 |
| WARDEN TONY PEREZ, | § | |
| ASST. WARDEN RODRIGUEZ, | § | |
| ASST., WARDEN MARMALEJO, | § | |
| MEDICAL DEPARTMENT OFFICIAL, | § | |
| AND UNIT CLASSIFICATIONS OFFICIAL, | § | |
| ET AL | | |
| Defendants | | |

STATE OF TEXAS          §

COUNTY OF HIDALGO     §

Before me, the undersigned authority, personally appeared Darryl Anderson, who being duly sworn deposes as follows:

1.  "My name is Darryl Anderson.  I am over 21 years of age, of sound mind, and capable of making this affidavit.  I have never been convicted of a crime of moral turpitude, have personal knowledge of the facts stated herein, and they are true and correct.

2.  I am employed by the Wackenhut Corrections Corporation and am currently assigned to the Lockhart Prison Unit as the Senior Warden.  I have worked for the Wackenhut Corrections Corporation since 1989.  I was the Senior Warden at the Willacy County Unit in Willacy County, Texas, which is a private prison facility operated by the

1

**EXHIBIT B**

CSMPDF - www.fesits.com

003

Wackenhut Corrections Corporation under contract with the Texas Department of Criminal Justice, from September 1996 until March 1999. I was employed by the Texas Department of Criminal Justice from approximately 1984 to 1989.

2.      The Willacy County Unit houses convicted male felons who are sentenced to prison and remanded into the custody of the Texas Department of Criminal Justice. The Willacy County Unit is governed by the same policies and procedures as those prison units operated by the Texas Department of Criminal Justice. The policies and procedures that the Willacy County Unit are obligated to follow are not developed by the Wackenhut Corrections Corporation.

3.      The assignment of inmates to any type of housing within the Willacy County Unit and the Texas Department of Criminal Justice prison units is governed by various policies and procedures, including Administrative Directives, the TDCJ-ID Plan for In-Cell Integration, and TDCJ-ID Classification Plan, which were all developed by the Texas Department of Criminal Justice. The inmate housing assignment criteria and procedures were developed in compliance with the class action lawsuits of *Ruiz v. Lynaugh*, Civil Action No. H-78-987 and *Lamar v. Lynaugh*, Civil Action No. 72-H-1391. The policies and procedures developed by Texas Department of Criminal Justice and followed by the Wackenhut Corrections Corporation were developed prior to the opening of the Willacy County Unit in January 1996.

3.      The assignment of inmates to housing is typically done by the Unit Classification Department, not any of the wardens at the unit. The individuals who were

2

Case 1:96-cv-00160   Document 30   Filed in TXSD on 02/18/2000   Page 67 of 72

part of the Unit Classification Department at the Willacy County Unit in July 1996 and responsible for assigning inmates to housing were called Case Managers. The case managers were initially trained by the Texas Department of Criminal Justice, Institutional Division at the Segovia Unit in Edinburg, Texas. That initial training lasted several days. They were then brought onto the Unit and given on the job training. During the period of their on the job training, I spent two full weeks working with them at the Willacy County Unit in January 1996, then another two full weeks in March 1996. My qualifications for training the Case Managers how to assign inmates to housing consists of 8 years experience in classification and I was a certified staff trainer. The wardens at the Willacy County Unit were not involved in the training process.

     4.    When an inmate is being reassigned to different housing, the Case Managers are trained to review the inmate's HS-18 form which lists any housing restrictions imposed by the medical department. Many factors are used in determining housing assignments, such as institutional behavior, victimization, disruptive group affiliation or activity, involvement in criminal activity and medical conditions. Once an inmate's cell assignment status has been determined, the actual housing assignment is typically made by a Case Manager at the Unit where the inmate is confined. Additionally, neither security personnel nor the Case Managers can impose any restrictions on an inmate's housing. If he has medical problems that warrant restrictions, those restrictions are determined by medical personnel."

5.    "Further affiant sayeth not."


DARRYL ANDERSON

SUBSCRIBED AND SWORN BEFORE ME, the undersigned authority, on this the _16th_ day of February, 2000.


NOTARY PUBLIC STATE OF TEXAS



KATHERINE MARY LINDSEY
Notary Public, State of Texas
My Commission Expires
OCT. 29, 2000

4

☒003/005

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | |
| | § | |
| WACKENHUT, INC., CORP., | § | CIVIL ACTION B-96-160 |
| WARDEN TONY PEREZ, | § | |
| ASST. WARDEN RODRIGUEZ, | § | |
| ASST., WARDEN MARMALEJO, | § | |
| MEDICAL DEPARTMENT OFFICIAL, | § | |
| AND UNIT CLASSIFICATIONS OFFICIALS, | § | |
| ET AL | | |
| Defendants | | |

STATE OF TEXAS          §

COUNTY OF WILLACY     §

Before me, the undersigned authority, personally appeared Ramon Rodriguez, who being duly sworn deposes as follows:

1. "My name is Ramon Rodriguez. I am over 21 years of age, of sound mind, and capable of making this affidavit. I have never been convicted of a crime of moral turpitude, have personal knowledge of the facts stated herein, and they are true and correct.

2. I am employed by the Wackenhut Corrections Corporation and am currently assigned to the Willacy County Unit as the Assistant Warden of Programs. I have held that position since the Unit opened in January 1996.

1

**EXHIBIT C**

2.    I am a named defendant in Cause No. B-96-160, styled *Baldemar Espinosa,*

*Jr. v. Wackenhut Inc., Corp., et al.* currently pending in the United States District Court for

the Southern District of Texas, Brownsville Division.

3.    I have reviewed records showing Baldemar Espinosa, Jr.'s housing assignments

while he was confined at the Willacy County Unit.  Except for the night of July 4, 1996,

Inmate Espinosa was always assigned to a lower bunk while at the Unit.  After 5 p.m. on July

4, 1996 he was reassigned from administrative segregation to the general population and was

assigned to an upper bunk that night only.  If Inmate Espinosa believed that assignment was

made in error he could have refused to go to his assigned housing which would have brought

the matter to the attention of a supervisor, he could have submitted an emergency grievance

to one of the wardens or he could have submitted an I-60 form which is a request to an

official, none of which were done.

4.    Charles Marmolejo was an Assistant Warden at the Willacy County Unit from

June 3, 1996 until August 11, 1997.  Prior to June 3, 1996, he was not employed at the

Willacy County Unit.

5.    The security personnel at the Willacy County Unit are trained by Wackenhut

Corrections Corporation based on guidelines by the Texas Department of Criminal Justice.

They are trained on and instructed to follow the policies and procedures developed by the

Texas Department of Criminal Justice.  The security personnel receive 160 hours of pre-

service training before they go to work at the Unit and 40 hours of on the job training once

they are assigned to the Unit.  Every year each employee in security receives another 40

2

hours of in-service training.  Part of the security personnel's pre-service training includes instruction on the housing assignment criteria and procedures for inmates, including inmates with medical restrictions."

6.       "Further affiant sayeth not."

RAMON RODRIGUEZ

SUBSCRIBED AND SWORN BEFORE ME, the undersigned authority, on this the *16ᵗʰ* day of February, 2000.

EVANGELINE GUTIERREZ
Notary Public
State of Texas
My Comm. Exp. 11-25-2002

NOTARY PUBLIC STATE OF TEXAS

3

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has

been forwarded by certified mail, return receipt requested to Mr. J. Arnold Aguilar, Artemis

Square, Suite H-2, 1200 Central Boulevard, Brownsville, Texas 78520 in accordance with

Rule 5(d) of the Federal Rules of Civil Procedure, on the ___17th___ day of February, 2000.


Linda M. Kearney

wp\s: wackenhut\espinoza\dismiss.mot