33

United States District Court
Southern District of Texas
FILED

APR 0 7 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| WACKENHUT INC. CORP., WARDEN | § | B - 96 - 160 |
| TONY PEREZ, ASST. WARDEN | § | |
| RODRIGUES, ASST. WARDEN | § | |
| MARMALEJO, MEDICAL DEPARTMENT | § | |
| OFFICIALS and UNIT CLASSIFICATIONS | § | |
| OFFICIALS | § | |

## PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO LATE FILE PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE U. S. DISTRICT COURT:

COMES NOW **BALDEMAR ESPINOSA, JR.**, Plaintiff herein, and respectfully requests leave of Court to late file his Response to Defendant's Motion for Summary Judgment in the above styled and numbered cause. Plaintiff's Response to Defendant's Motion for Summary Judgment is attached hereto as Exhibit "B."

### I.

On September 14, 1999, a Scheduling Order was entered herein, whereby it was ordered that Defendants were to file their Motion for Summary Judgment by February 18, 2000, and Plaintiff's Response was thereafter to be filed by March 20, 2000.

V:\FP\MOTIONS\97-108.M4L                                                              PAGE 1

## II.

Counsel for Plaintiff would show that he had trial scheduled on February 22, 2000, in the 229th Judicial District Court, Starr County, Texas, in the case below:

**Elizabeth Garcia and Sharon Dreumont  vs.  Rio Grande City**

**Cause No. DC-98-66 and DC-98-72, pending in the 229th Judicial District Court, Starr County, Texas**

Although trial did not go forward on February 22, 2000, this case was set first on the Court's docket and Defendant had to prepare and attend on the assumption trial would proceed.

## III.

Counsel for Plaintiff would further show that Plaintiff's counsel began trial in a separate civil action, on March 6, 2000, and which concluded on March 14, 2000, in the 103rd Judicial District Court, Cameron County, Texas, styled as follows:

**Maria Guadalupe Perez and husband Gerardo Perez  vs.  Jim Scheopner**

**Cause No. 97-12-7629-D, pending in the 103rd Judicial District Court, Cameron County, Texas**

Again, counsel had to spend considerable time preparing for and attending this trial. Once that trial was concluded, however, Plaintiff's counsel simply overlooked the March 20th deadline set for responding to Defendants' Motion for Summary Judgment. As a result of Plaintiff's counsel hectic schedule and his oversight, Plaintiff did not timely file a Response prior to the deadline of March 20, 2000. It was not until counsel began to prepare for the hearing that he realized the Response had not been filed timely. Immediately thereafter, the Response attached hereto was prepared. The failure to file a response timely was not intentional or in any manner designed to delay this action. *See* Exhibit "A," Affidavit of J. Arnold Aguilar.

## IV.

Plaintiff would therefore request that the Court grant his Motion for Leave to Late File Plaintiff's Response to Defendant's Motion for Summary Judgment and that this Court allow the Clerk to file Plaintiff's Response to Defendant's Motion for Summary Judgment, attached hereto as Exhibit "B" and incorporated by reference the same as if fully copied and set forth at length.

## V.

This motion is not being presented for harassment or delay, but solely so that the interests of justice may be served.  Plaintiff would further show that Defendants are unopposed to the filing of this Motion.

WHEREFORE, PREMISES CONSIDERED, Plaintiff **BALDEMAR ESPINOSA, JR.**, respectfully requests that the Court enter an Order Granting Leave to late file Plaintiff's Response to Defendants' Motion for Summary Judgment attached hereto as Exhibit "B."

Signed on this the 6th day of April, 2000.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone      :  (956) 504-1100
Facsimile      :  (956) 504-1408

By: _____
       J. Arnold Aguilar
       Federal Adm. No. 6822
       S B No. 00936270
       Attorney for Plaintiff,
       BALDEMAR ESPINOSA, JR.

## CERTIFICATE OF CONFERENCE

I, J. Arnold Aguilar, hereby certify that I have conferred with Defendants' attorney on the 6th day of April, 2000, wherein she informed me that she is not opposed to the filing Plaintiff's Unopposed Motion for Leave to Late File Plaintiff's Response to Defendants' Motion for Summary Judgment.

_____
J. Arnold Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF'S MOTION FOR LEAVE TO LATE FILE PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** has on this the 6th day of April, 2000, been forwarded via certified mail, return receipt requested to:

Ms. Linda M. Kearney
PORTER, ROGERS, DAHLMAN & GORDON, P.C.
P. O. Box 2968
Corpus Christi, Texas  78403-2968

J. Arnold Aguilar

V:\FP\MOTIONS\97-108.M4L

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| WACKENHUT INC. CORP., WARDEN | § | B - 96 - 160 |
| TONY PEREZ, ASST. WARDEN | § | |
| RODRIGUES, ASST. WARDEN | § | |
| MARMALEJO, MEDICAL DEPARTMENT | § | |
| OFFICIALS and UNIT CLASSIFICATIONS | § | |
| OFFICIALS | § | |

## AFFIDAVIT OF J. ARNOLD AGUILAR

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned official, on this day appeared **J. ARNOLD AGUILAR**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

My name is J. Arnold Aguilar. I am over 18 years of age, I have never been convicted of a crime, and I am fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

As counsel for Defendant Rio Grande City, I had trial scheduled on February 22, 2000, in the 229th Judicial District Court, Starr County, Texas, in the case below:

*Elizabeth Garcia and Sharon Dreumont vs. Rio Grande City*
**Cause No. DC-98-66 and DC-98-72, pending in the 229th Judicial District Court, Starr County, Texas**

Although trial did not go forward on February 22, 2000, this case was set first on the Court's docket and I had to prepare and attend on the assumption trial would proceed.

V:\FP\MISC\97-108AA.AFF

PAGE 1 OF 2

I would further show that I began trial in a separate civil action, on March 6, 2000, which was concluded on March 14, 2000, in the 103rd Judicial District Court, Cameron County, Texas, styled as follows:

*Maria Guadalupe Perez and husband Gerardo Perez  vs.  Jim Scheopner, et al.* **Cause No. 97-12-7629-D, pending in the 103rd Judicial District Court, Cameron County, Texas**

Again, I had to spend considerable time preparing for and attending this trial.  Once that trial was concluded, however, I simply overlooked the March 20th deadline set for responding to Defendants' Motion for Summary Judgment.  As a result of my hectic schedule and oversight, I did not timely file a Response prior to the deadline of March 20, 2000.  It was not until I began to prepare for the hearing that I realized the Response had not been filed timely.  Immediately thereafter, the Response attached hereto was prepared.  The failure to file a response timely was not intentional or in any manner designed to delay this action.

Further affiant sayeth not.


J. Arnold Aguilar



        SUBSCRIBED AND SWORN TO BEFORE ME on the 6th day of April, 2000, to certify which witness my hand and official seal.



Notary Public, State of Texas


My Commission Expires:

_0̶3̶/2̶7̶/0̶3̶_


V:\FP\MISC\97-108AA.AFF                                                  PAGE 2 OF 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| WACKENHUT INC. CORP., WARDEN | § | B - 96 - 160 |
| TONY PEREZ, ASST. WARDEN | § | |
| RODRIGUES, ASST. WARDEN | § | |
| MARMALEJO, MEDICAL DEPARTMENT | § | |
| OFFICIALS and UNIT CLASSIFICATIONS | § | |
| OFFICIALS | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW **BALDEMAR ESPINOSA, JR.**, Plaintiff in the above styled and numbered action, and files this his Response to Defendants' Wackenhut Corrections Corporation, Warden Tony Perez, Asst. Warden Ramon Rodriguez, and Asst. Warden Charles Marmalejo's Motion to Dismiss and/or Motion for Summary Judgment, with Brief in Support, and for such response would respectfully show unto the Court the following:

### I.

### SUMMARY OF RESPONSE

The summary judgment evidence provided will establish that Defendant Wackenhut Corrections Corporation, under Warden Tony Perez and its other agents and officials clothed with authority, failed to provide Plaintiff Baldemar Espinosa with proper attention to his serious

CHzPDF - www.fecho.com

medical and safety needs, although they knew, or but for their deliberate indifference should have known, that an injury could or would occur if he was required to sleep in a top bunk to which he was assigned and he suffered an epileptic attack.

Defendants' motions pursuant to 28 U.S.C. §1915(d) and Rule 12(b)(6) are superfluous allegations submitted as additional bases for dismissal.  The §1915(d) motion is dependent on the merits of their Motion for Summary Judgment, and the Rule 12(b)(6) motion is barred at this time.  Accordingly, they should both be denied.

Defendants Wackenhut Corrections Corporation's and Tony Perez' Motion for Summary Judgment should be denied because Plaintiff has pled and provided evidence of these Defendants' negligence and violations of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution.  Because Plaintiff is only seeking monetary damages at this time, any applicable administrative remedies did not have to be exhausted.  Defendant Perez also had specific personal knowledge of Plaintiff's medical condition as recent as four (4) days before Plaintiff's injuries, and considerable evidence is being submitted herewith to establish that Defendant Wackenhut Corrections Corporation, through its agents and officials, had direct knowledge of Plaintiff's epileptic condition and failed to train or establish procedures to protect Plaintiff from any injury such as that which occurred in this case.  Because of Warden Perez' specific personal knowledge and involvement in providing for medical treatment of Plaintiff Espinosa, and because Defendant Wackenhut can only act through its employees and agents, these Defendants are liable herein.

Warden Perez and Assistants Rodriguez and Marmalejo are also liable for failing to properly train or supervise the particular jailers assigned to oversee Plaintiff because the policies or procedures in existence being followed by these jailers did not allow them to provide for a bottom bunk for Plaintiff Espinosa when one was necessary and requested. Plaintiff's damages were more than *de minimus*, and they are sufficient to establish a claim under §1983. The injury, or exacerbation of a prior injury, continued at least through October 1996, although Defendant Wackenhut failed to alleviate the injuries to Plaintiff's right shoulder and back, or his headaches.

Finally, the actions of Defendants Wackenhut and the individual Defendants described above constituted negligence and proximately resulted in the injuries and damages suffered by Plaintiff. Their failure to use ordinary care in simply checking Plaintiff's medical records and transferring him to a lower bunk, even if it was in the same cell or in another cell for just a single night while the issue could be investigated, was negligence and directly caused Plaintiff's injuries.

With regard to the claim of intentional infliction of emotional distress, that claim has previously been withdrawn from Plaintiff's pleadings.

## II.

## **FACTUAL BACKGROUND**

This lawsuit arose as a result of Defendants' inadequate medical treatment of Plaintiff Baldemar Espinosa, and in particular their refusing to provide Plaintiff with a lower bunk bed, in spite of his explaining to them, and their own knowledge, that he had epilepsy and that assignment to an upper bunk could cause him the injuries that he in fact suffered. Plaintiff was

first diagnosed with epilepsy in 1989. Defendants have been aware that he had epilepsy and was restricted to a lower bunk since at least 1995.

Attached hereto as Exhibit A-1 is a copy of the grievance Plaintiff filed on June 20, 1996, in which he was complaining about the medical department's lack of concern for his medical needs by failing to maintain his Phenobarbital medication necessary to control his epilepsy. He was told that the department had run out of his medication and that he would have to wait until it was reordered. Plaintiff specifically complained about the medical department's deliberate indifference to his concerns. As set out in Exhibit A-1, Warden Tony Perez waited until July 1, 1996, to respond that Plaintiff's request did not meet the criteria for an emergency grievance and it would instead be processed as a regular grievance. When Plaintiff again complained on June 25, 1996, that he was not receiving his medication, Warden Tony Perez only responded on July 1 that his complaint had been noted and investigated and that assurances would be made that he receive his medication. Exhibit A-2.

At least four (4) documents in Plaintiff's file indicate that Plaintiff Espinosa had been restricted to a lower bunk **prior** to his fall on July 5, 1996. *See* Exhibits A-3 though A-6. Each of these documents restrict Plaintiff to a lower bunk, and at least two (2) other documents acknowledged his need for a lower bunk on the day of the incident, July 5. *See* Exhibits A-7 and A-8. Because of Plaintiff's epilepsy, he had been assigned to a lower bunk in order to prevent any injury or worsening of any injury should he have a seizure and fall out of his bunk.

On July 4, 1996, Plaintiff was taken to his cell and assigned a top bunk. At that time, he told Officers Bernardo Rocha and Irma Cavazos that he could not accept a top bunk because of his medical condition of epilepsy. Plaintiff told them that he was restricted to a bottom bunk

for health and safety reasons. These officers told him they would call Medical Classifications and make the necessary change. After a while passed and nothing was done, he again notified Officer Rocha of his need for a bottom bunk, but again he was not given a bottom bunk. At approximately 2:00 p.m., after the shift change, Officer Armando Gonzalez came on duty. Officer Gonzalez was already aware that Plaintiff was epileptic. Officer Gonzalez sent Plaintiff to the Medical Department and told him to talk to them. When Plaintiff arrived at the Medical Department, he was told by Officer William Wassen that he needed to request a lower bunk, but Plaintiff explained to Wassen that that information was already in the file. Officer Wassen took no further action to assure that Plaintiff was given a bottom bunk. Plaintiff then returned to his cell.

When Plaintiff got to his cell, he told the officer on duty, Whitley, that he did not want to accept this bunk assignment, but Whitley told Plaintiff that if he did not accept the assignment, a disciplinary action would be filed against him for refusing it. Plaintiff asked Whitley to call someone to check again, which Whitley apparently did, but when he returned Whitley told Plaintiff that he would have to submit a request on an I-60 Form. That evening, when Plaintiff went to get his medication from Sgt. Guadalupe Pruneda, he again mentioned his need for a bottom bunk, but Pruneda told him it was now too late to do anything.

At about 10:00 o'clock p.m. there was another shift change, and Officer Miguel Morales took over for Officer Whitley. At about that time, he told Plaintiff to get in bed in the top bunk, which he did, and he fell asleep.

That night, at approximately 1:00 o'clock a.m., Plaintiff apparently had a seizure and fell to the floor from the top bunk. Although he does not remember the actual seizure, Plaintiff remembers thinking he would die because the nurses were taking too long to arrive. Plaintiff remembers his arms were cold and he felt like he couldn't get blood to them. The next day, the doctor did a quick evaluation of Plaintiff and told him he was fine and that he would get a bunk change in two (2) weeks.

When Plaintiff was returned to his cell again, with a top bunk assignment, he refused his housing. Because Plaintiff refused that housing, he was placed in Administrative Segregation. When he got out of Administrative Segregation, Plaintiff was again assigned to a cell with a top bunk. He again complained to the officers, who called the Warden, and he was finally given a lower bunk.

Although Plaintiff had had some prior back problems and headaches prior to his injuries on July 5, since that time his headaches have been bigger or worse, his lower back hurts where it didn't before, he cannot sit down for long periods of time, it hurts to bend over, and his right shoulder now pops and hurts. Plaintiff did not have any of these problems, or not to this extent, before his fall from the top bunk on July 5.

After this fall, Plaintiff continued going to the infirmary for treatment for his back pain and headaches. He continued to complain of pain in his back and right shoulder, as well as severe headaches, at least monthly, through October 14, 1996. *See* Exhibits A-9 through A-15. The pain in Plaintiff's right shoulder and back, as well as his headaches, continue to this day. Exhibit A.

## III.

## ARGUMENT AND AUTHORITIES

### A.   28 U.S.C. §1915(d)

Defendants assert initially that this action may be dismissed as a frivolous *in forma pauperis* proceeding pursuant to 28 U.S.C. §1915(d), if it appears Plaintiff's claim has no realistic chance of ultimate success or the claim has no arguable basis in law and fact.  As set out in Plaintiff's First Amended Original Complaint, the summary judgment evidence submitted herewith, and in Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff's allegations are not frivolous.  Contrary to Defendants' allegations, Plaintiff has more than "no realistic chance of ultimate success."  "If the Plaintiff has a 'slight' chance of success, there is obviously some chance," and the claim should not be dismissed.  ***Booker v. Koonce***, 2 F.3d 114, 116 (5th Cir. 1993).  Because Plaintiff's allegations and evidence are better set out in his Response to Defendants' Motion for Summary Judgment, the discussion in that section should suffice to defeat Defendants' §1915(d) claims.

### B.   MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants have no basis at this late date for filing their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b) provides that a Rule 12(b)(6) motion "shall be made before pleading if a further pleading is permitted."  Defendants filed their Original Answer on December 2, 1996, however, without first making any motion under Rule 12(b)(6).  Because this Motion was filed after Defendants' Original Answer (a further pleading that is permitted), it was not timely filed, and it should not therefore be considered. To the

extent this Court will consider that motion, however, Plaintiff would refer this Court to Plaintiff's Response to Defendants' Motion for Summary Judgment.

## C.   SUMMARY JUDGMENT

### A.   Summary Judgment Standard

The rules governing review of summary judgment motions are well established. The Court should grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986). When ruling on the motion, the Court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 106 S.Ct. 1348, 1356 (1986); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Nonetheless, a party opposing summary judgment may not rest upon mere allegations in the pleadings but must set forth specific summary judgment evidence showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. 2505, 2513-14 (1986); *Ragas*, 136 F.3d at 458.

Importantly, it is not necessary for the Plaintiff to establish the individual Defendants' illegal motive by clear and convincing evidence. *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1585 (1998). As the Supreme Court has noted, the question of improper intent is "a pure issue of fact." *Id*. at 1592. On this issue, then, Plaintiff need only provide evidence sufficient to create a fact issue as to the individual Defendants' actions and intent in denying him a medically necessary bottom bunk.

**B.**     <u>No Exhaustion of Administrative Remedies Necessary</u>

Defendants assert that Plaintiff may not complain of his prison conditions under any

Federal law by a prisoner confined in a prison until he has exhausted his administrative

remedies.    Initially, Plaintiff would direct the Court to Plaintiff's First Amended Original

Complaint, which sets out Plaintiff's allegations, both legally and factually.    Plaintiff is not

complaining about the prison conditions, but rather that Defendants' deliberate indifference to

his specific medical and safety need for a bottom bunk, because of his condition epilepsy, the

denial of which caused his injuries described herein.    As such, 42 U.S.C. §1997e would not

apply.

In addition, Defendants agree that "[i]f Plaintiff were simply seeking monetary damages,

administrative remedies would not have to first be exhausted."    *See* Defendants' Motion, p.13;

***Marsh v. Jones***, 53 F.3d 707, 709-10 (5th Cir. 1995).    Although Plaintiff had been seeking a

declaratory judgment and a permanent injunction, because he is no longer being held by the

Wackenhut facility there is no further need for this equitable relief.    Accordingly, because that

equitable relief would no longer be appropriate, and because Plaintiff is now seeking only

monetary damages, there is no need to exhaust any available administrative remedies.

**C.**     <u>Deliberate Indifference</u>

As set out above, Plaintiff need only provide sufficient evidence of a factual dispute to

survive summary judgment.    *<u>See</u> **Crawford-El v. Britton***, 523 U.S. 574, 118 S.Ct. at 1595.    As

set out in Plaintiff's affidavit, attached hereto as Exhibit A, Plaintiff had previously filed a

grievance on or about June 19, 1996, complaining that Defendant Wackenhut was failing to

maintain his Phenobarbital medication on June 18 and 19.    *<u>See</u>* Exhibit A-1.    He was told,

however, that he would have to wait until the medication was re-ordered. Defendant Warden

Tony Perez did not respond to this grievance until eleven (11) days later, on June 1, 1996, at

which point he explained that this was not an emergency grievance and that it would be

processed as a regular grievance. *Id*. On or about June 26, 1996, Plaintiff Espinosa again

complained through the grievance procedure that he had not received his medication on June 25.

Again, Warden Tony Perez did not respond until July 1, but this time he acknowledged the

seriousness of Plaintiff's complaint, indicated that "this office did a thorough investigation into

the procedures for providing medication and medical attention to inmates assigned to

segregation," and "duly noted" Plaintiff's complaint. Exhibit A-2.

Exhibits A-1 and A-2 were specifically signed by Defendant Tony Perez, and Exhibit A-2

specifically provided that his office had done a thorough investigation into providing medication,

presumably for Plaintiff and others similarly situated. It is unclear, therefore, why Defendants

would allege that "there is no evidence that the Wackenhut Defendants had any knowledge of

Plaintiff's medical condition. *See* Defendants' Motion, at p.14. It is clear that at the very least,

Defendant Warden Perez had direct knowledge of Plaintiff's medical condition, and his

investigation of this situation by "this office" either directly included Assistant Wardens

Rodriguez and Marmalejo, or should have included those assistant wardens, in order to provide

for Plaintiff's *future* medical and safety needs.

In addition, Plaintiff's Health Summaries for Classification clearly provided that Plaintiff

was assigned to a lower bunk only. *See* Exhibits A-3; A-4; A-5; and A-6. These documents

were drafted as early as December 18, 1995 (Exhibits A-3 & A-4), and as recent as a month

before the subject incident, on June 3, 1996 (Exhibit A-6). Each of these documents would have

been a part of Plaintiff's prison file, and would have clearly indicated that Plaintiff was restricted to a lower bunk.

As set out in Plaintiff's Affidavit, Exhibit A, when Plaintiff was taken to his cell on July 4, 1996, he was assigned a top bunk. He specifically notified Officers Rocha and Cavazos that he could not accept a top bunk because of his medical condition of epilepsy, and that he was restricted to a bottom bunk for health and safety reasons. Although he was told the officers would call Medical Classifications to make the necessary change, nothing was done. Had these officers reviewed, or been trained to review, Plaintiff's prison file, they would have determined that Plaintiff required a bottom bunk because of his epilepsy, and they could have made the appropriate change. Alternatively, even if all other bunks were filled, had these guards been properly trained or authorized, they could have simply allowed Plaintiff Espinosa to trade out his top bunk with someone who had a lower bunk for just one (1) night, while they did further investigation into his file to confirm his need for a bottom bunk. Plaintiff began making his request for a bunk change before the 2:00 o'clock p.m. shift change, so there was still plenty of time before going to bed for these officers to check Plaintiff's file and make the appropriate change.

After Officer Armando Gonzalez came on duty at the 2:00 o'clock p.m. shift change, Plaintiff Espinosa again discussed with him the need for a lower bunk, although Officer Gonzalez already knew Plaintiff was epileptic. Although Officer Gonzalez sent Plaintiff to the Medical Department, once he arrived there Officer Wassen took no action to assure Plaintiff would be given a bottom bunk. When he returned to his cell, Plaintiff told Officer Whitley that he did not want to accept the top bunk assignment, but Officer Whitley told Plaintiff that if he

did not accept the assignment, a disciplinary action would be filed against him for refusing it. Although he asked Whitley to check on his file again, Whitley told him only that he would have to submit a request on a separate form. Similarly, when he talked to Sgt. Pruneda about his need for a bottom bunk, Pruneda also told him it was too late to do anything. Exhibit A. All this was despite the fact that Plaintiff's file specifically required that he be assigned to a bottom bunk. Exhibits A-3 - A-6. When Officer Morales later told Plaintiff to go to sleep in the top bunk, this was again contrary to Plaintiff's medical and safety needs, and was directly contrary to the requirements set out in his file, even though Defendant Perez had personal knowledge of Plaintiff's medical condition and Defendants Rodriguez and Marmalejo had knowledge through Warden Perez' office's investigation.

Defendants have not alleged that the actions of the individual jailers to whom Plaintiff complained were in any way in violation of Wackenhut's policies and procedures. Defendants therefore agree that their failure to provide Plaintiff with a bottom bunk, despite his complaints and requests for a bottom bunk as a medical and safety necessity, establishes that these supervisors failed to properly train or supervise the jailers on the provision of appropriate medical and safety precautions when the need for such precaution is, or should be, apparent. Regardless of the number of hours or on the job training received, no evidence was provided by Defendants that the jailers were trained to check a prisoner's file and arrange for a lower bunk when there is a medical or safety necessity, or when a prisoner requests such a medical or safety precaution.

Particularly where Plaintiff's file provided that he was restricted to a lower bunk, where Plaintiff continued to complain to his jailers that he needed a lower bunk because of his epilepsy

and his likelihood of injury should he have a seizure and fall out of his bunk, and because no bunk transfer was ever made, Plaintiff has provided sufficient evidence that the actions of Defendants Warden Perez and Assistant Wardens Rodriguez and Marmalejo failed to provide the appropriate training necessary to assure that Plaintiff's medical and safety needs would be fulfilled.  Defendant Warden Perez was specifically aware of Plaintiff's medical condition, and through his investigation the assistant wardens should have been aware as well.  To allow a condition to exist without appropriate training to officers of the need for epileptic patients to be restricted to bottom bunks, and to incorporate procedures to assure that when prisoners complain of such a need that their complaints will be heard, indicates a deliberate indifference to Plaintiff's and other prisoners' serious medical and safety needs.  Although Defendants failed to deny that the actions of their jailers were not standard operating procedures, they also failed to identify why Plaintiff's numerous complaints and requests for a lower bunk went unheard, particularly where his file indicated that he was restricted to a lower bunk.  Having known of Plaintiff's epileptic condition and failing to take appropriate action to insure that epileptic prisoners' requests for lower bunks be remedied, the actions of Defendants exhibit subjective recklessness at the very least, as well a deliberately indifference to Plaintiff's serious medical and safety needs.

### D.    Respondeat Superior and Supervisory Liability

Plaintiff agrees that Defendants may not be held liable under §1983 on a theory of *respondeat superior*.  As set out above, however, each of those Defendants are not being sued §1983 on a theory of respondeat superior, however, but rather on their own deliberate indifference to Plaintiff's serious medical and safety needs, which directly resulted in his injuries

V:\FP\MOTIONS\97-108.RSP

on the morning of July 5, 1996, in violation of the Eighth and Fourteenth Amendments. Had the Defendants established appropriate policies and procedures to redress epileptic inmates' need for lower bunks, particularly when that information is part of the inmate's file, or when the inmate makes specific complaints or directs jailers to his need for a lower bunk, Plaintiff would not have sustained his injuries herein. The facts set out in Plaintiff's Affidavit, Exhibit A, and which are discussed in the preceding paragraph, establish these Defendants' deliberate indifference to Plaintiff's serious medical and safety needs.

###    E.    Damages

Had the Defendants responded to Plaintiff's known medical needs, and provided adequate training and supervision to the jailers to provide an avenue for epileptic inmates to receive a bottom bunk where necessary or where requested, Plaintiff's fall from the top bunk would have been prevented. Although Defendants argue that Plaintiff did not sustain any damages, or that his injuries were *de minimus*, in fact Plaintiff's injuries were considerable, and were more than just a "bruised ear lasting for three (3) days." To the contrary, when the Plaintiff was taken to the doctor on July 5, he only received a cursory evaluation and was dismissed. Exhibit A. In spite of this, Plaintiff continued to complain about the pain that resulted from this fall, which Plaintiff attempted to make Defendants understand was significant, but which Defendants would only trivialize. *Id.*

On July 17, 1996, Plaintiff complained about continued back pain and the ineffectiveness of the medication he had been prescribed. He also complained about continued headaches. Exhibit A-9. He returned on July 23, 1996 and, in addition to other concerns, asked about some tests that were supposed to be done on him. Exhibit A-10. On August 26, 1996, he complained

about pain to his right arm, his back pain, and his continued headaches.  Exhibit A-11.  He raised these same complaints again on September 2 (Exhibit A-12), October 1 (Exhibit A-13), October 7 (Exhibit A-14), and October 14 (Exhibit A-15).  In addition, the pain in his back and right arm, as well as his headaches, continue to this day.  Clearly, these injuries are considerably more than a simple sore, bruised ear, lasting for three (3) days.  Because Plaintiff has provided some evidence of more than *de minimus* damages, he has established a fact issue on this question.

**F.**    <u>**Negligence**</u>

Plaintiff has also pled that the actions of all Defendants constituted negligence under state law.  As set out above, the actions of Defendants in negligently failing to provide for Plaintiff's medical and safety needs, particularly where Defendants were aware of such needs and failed to respond in providing him with a lower bunk, establishes liability.  As Defendants point out, negligence means simply the failure to use ordinary care.  The factual allegations set out by Plaintiff are sufficient to create a fact issue on the negligence of Defendants.  As Defendants point out, Wackenhut Corrections Corporation "is an entity which can only commit acts through its agents and/or employees."  Defendants' Motion p.16.  Plaintiff's specific request for a bottom bunk to Officers Rocha, Cavazos, Gonzalez, Wassen, Whitley, Pruneda and Morales, as set out in Plaintiff's affidavit and in the documents restricting him to a lower bunk, constitute sufficient evidence to establish a fact issue on whether Defendants negligently failed to provide Plaintiff with a bottom bunk, and whether his injuries were caused by the negligence of Defendants.  Exhibits A; A-3; A-4; A-5; and A-6.

## **CONCLUSION**

The factual evidence and documents submitted in Exhibit A set out a cause of action for violation of Plaintiff's Eighth and Fourteenth Amendment rights under 42 U.S.C. §1983, and for common law negligence.  Defendants had specific knowledge of Plaintiff's medical condition, his file included specific requirements that he be assigned to a lower bunk only, he specifically requested at various times during the day and evening of July 4 that he be assigned to a bottom bunk, from various prison officials, including the Medical Department, in spite of which he was still required to sleep in a top bunk.  As a result of Defendants' actions and failure to supervise and train their employees, when Plaintiff suffered an epileptic seizure during the early morning of July 5, he fell from the top bunk to which he had been ordered and incurred considerable injuries to his back and right shoulder, and experienced additionally severe headaches.  The evidence submitted establishes genuine issues of material fact that preclude summary judgment.


WHEREFORE, PREMISES CONSIDERED, Plaintiff **BALDEMAR ESPINOSA, JR.**, respectfully requests that upon consideration of Defendants' Motion to Dismiss and/or Motion for Summary Judgment that such motions be DENIED in their entirety, and that Plaintiff be granted such other and further relief to which he may show himself to be justly entitled.

Signed on this the _7th_ day of April, 2000.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas 78520
Telephone    : (956) 504-1100
Facsimile    : (956) 504-1408


By: _____
J. Arnold Aguilar
Federal Adm. No. 6822
S B No. 00936270
Attorney for Plaintiff,
BALDEMAR ESPINOSA, JR.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT** has on this the _7th_ day of April, 2000, been forwarded via certified mail, return receipt requested to:


Ms. Linda M. Kearney
PORTER, ROGERS, DAHLMAN & GORDON, P.C.
800 N. Shoreline, Suite 800
Corpus Christi, TX 78401-3708


_____
J. Arnold Aguilar


V:\FP\MOTIONS\97-108.RSP

PAGE 17

# EXHIBIT "A"

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| WACKENHUT INC. CORP., WARDEN | § | B - 96 - 160 |
| TONY PEREZ, ASST. WARDEN | § | |
| RODRIGUES, ASST. WARDEN | § | |
| MARMALEJO, MEDICAL DEPARTMENT | § | |
| OFFICIALS and UNIT CLASSIFICATIONS | § | |
| OFFICIALS | § | |

---

## AFFIDAVIT FOR BALDEMAR ESPINOSA, JR.

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF _____ | § |

BEFORE ME, the undersigned official, on this day appeared **BALDEMAR ESPINOSA,**

**JR.**, who is personally known to me, and first being duly sworn according to law upon his oath

deposes and says:

My name is Baldemar Espinosa, Jr. I am over 18 years of age and I am competent to make this affidavit. I have personal knowledge of the following facts, and they are all true and correct.

I am the Plaintiff in Civil Action No. B-96-160, styled ***Baldemar Espinosa, Jr. vs. Wackenhut Inc. Corp., et seq.,*** pending in the United States District Court for the Southern District of Texas, Brownsville Division. This lawsuit arose as a result of Defendants' inadequate medical treatment of me, and in particular their refusing to provide me with a lower bunk bed, in spite of my explaining to them and their knowledge that I had epilepsy and that assignment to an upper bunk could cause me the injuries that I in fact suffered. I was first diagnosed with epilepsy in 1989. Defendants have been aware that I had epilepsy and was restricted to a lower bunk since at least 1995.

Attached hereto as Exhibit A-1 is a copy of the grievance I filed on June 20, 1996, where I was complaining about the medical department's lack of concern for my medical needs by failing to maintain my Phenobarbital mediation necessary to control my epilepsy. I was told that the department had run out of my medication and that I would have to wait until it was reordered. I was specifically concerned about the medical department's deliberate indifference to my concerns. As set out in Exhibit A-1, Warden Tony Perez told me on July 1, 1996, that my request did not meet the criteria for an emergency grievance and it would be processed as a regular grievance. When I again complained on June 25, 1996, that I was not receiving my medication, Warden Tony Perez only responded on July 1 that my complaint had been noted and assurances would be made that I receive my medication. Exhibit A-2.

Attached hereto are the following documents restricting me to a lower bunk assignment:

| | |
|---|---|
| Exhibit A-3: | 12/18/95 handwritten Health Summary for Classification; |
| Exhibit A-4: | 12/18/95 computerized Health Summary for Classification; |
| Exhibit A-5: | 1/10/96 computerized Health Summary for Classification; |
| Exhibit A-6: | 6/3/96 computerized Health Summary for Classification; |
| Exhibit A-7: | 7/5/96 Inter-Office Communication transferring me out of the Medical Infirmary; and, |
| Exhibit A-8: | 7/5/96 Inter-Office Communication from Medical Department. |

Because of my epilepsy, I had always been assigned to a lower bunk, to prevent any injury, or worsening of any injury, should I have a seizure and fall out of my bunk.

On July 4, 1996, I was taken to my cell and assigned a top bunk. At that time, I told Officers Bernardo Rocha and Irma Cavazos that I could not accept a top bunk because of my medical condition of epilepsy. I told them that I was restricted to a bottom bunk for health and safety reasons. These officers told me they would call Medical Classifications and make the necessary change. After nothing was done for a while, I notified Officer Rocha again of my need for a bottom bunk, but he did nothing. At approximately 2:00 o'clock p.m., after the shift changed, Officer Armando Gonzalez came on duty. Officer Gonzalez was already aware that I was epileptic. Officer Gonzalez sent me to the Medical Department and told me to talk to them. When I arrived at the Medical Department, I was told by Officer William Wassen that I needed to request a lower bunk, but I explained to him that that information was already in the

file.  Officer Wassen took no further action to assure that I was given a bottom bunk. I then returned to my cell.

When I got to my cell, I told the officer on duty, Whitley, that I did not want to accept this bunk assignment, but he told me that if I did not accept the assignment, a disciplinary action would be filed against me for refusing it.  I asked Whitley to call someone to check again, which he did, but when he returned he told me that I would have to submit a request on an I-60 Form.  That evening, when I went to get my medication from Sgt. Guadalupe Pruneda, I again mentioned my need for a bottom bunk, but he told me it was now too late to do anything.

At about 10:00 o'clock p.m. there was another shift change, and Officer Miguel Morales took over for Officer Whitley.  At about that time, he told me to get in bed in the top bunk, which I did, and I fell asleep.

That night, at approximately 1:00 o'clock a.m., I apparently had a seizure and fell to the floor from the top bunk.  Although I do not remember the actual seizure, I remember thinking I would die because the nurses were taking too long to arrive.  I remember my arms were cold and I felt like I couldn't get blood to them.  The next day, the doctor did a quick evaluation of me and he told me I was fine and that I would get a bunk change in two (2) weeks.

When I was returned to my cell again, with a top bunk assignment, I refused my housing.  Because I refused that housing, I was placed in Administrative Segregation.  When I got out of Administrative Segregation, I was again assigned to a cell with a top bunk.  I again complained to the officers, who called the Warden, and I was finally given a lower bunk.

Although I had had some prior back problems and headaches prior to my injuries on 7/5/96, since that time my headaches have been bigger or worse, my lower back hurts where it didn't before, I cannot sit down for long periods of time, it hurts to bend over, and my right shoulder now pops and hurts.  I did not have any of these problems, or not to this extent, before my fall from the top bunk on 7/5/96.

After this fall, I continued going to the infirmary for treatment for my back pain and headaches.   Attached hereto as Exhibits A-9 through A-15 are copies of the following medical requests:

| | |
|---|---|
| Exhibit A-9: | 7/17/96 complaint for back pain and headaches; |
| Exhibit A-10: | 7/23/96 complaint that tests have not yet been done; |
| Exhibit A-11: | 8/26/96 complaint of right arm and back pain and headaches; |

| Exhibit A-12: | 9/2/96 complaint of right arm and back pain and headaches; |
|---|---|
| Exhibit A-13: | 10/1/96 complaint of headaches and back and shoulder problems; |
| Exhibit A-14: | 10/7/96 complaint of right arm pain; and, |
| Exhibit A-15: | 10/14/96 complaint of right arm pain. |

The pain in my right shoulder and back, as well as my headaches, continue to this day.

Copies of each of the documents referenced herein and attached hereto as Exhibits A-1 through A-15 are true and correct copies of the originals, or are copies that I was provided by Defendants.

Further affiant sayeth not.

                                                  _____

                                                  Baldemar Espinosa, Jr.

SUBSCRIBED AND SWORN TO BEFORE ME on the \_\_\_\_\_ day of April, 2000, to certify which witness my hand and official seal.

                                                  _____

                                                  Notary Public, State of Texas

                                                  My Commission Expires:

                                                  _____

V:\FP\MISC\97-108.AFF

# TEXAS DEPARTMENT OF CORRECTIONS
## INMATE GRIEVANCE FORM
### FORMA PARA QUEJAS DE LOS PRESO

STEP 1
PASO 1

Inmate Name: *BALDEMAR ESPINOSA, J.R*
Nombre Del Preso

Inmates TDC Number: *#576926*
Numero Del TDC Preso

Unit: *WILLACY CO. UNIT*
Unida

Housing Assignment: *H3A #32 Seg*
Vivienda Asignada

Check if an emergency grievance: ☑yes(si) ☐no(no)
Marque si es una queja de emergencia

I object to the posting of issues presented in this grievance: yes(si)   no(n.
No deseo que se publiquen los asunto tratados en esta queja

**OFFICE USE ONLY / Para Uso De la Queja Solamint**

Unit Number: *0424*

Date Received: *JUN 20 1996*

Code: *6.1.0*

UGC Signature:

Specify how and when informal resolution was attempted / Especifique como y cuando trató de hallar una solucion informal:

*6-18-96 AT THE PM PILL LINE WITH THE MEDICAL STAFF DISTRIBU. MEDICATION AND THE OFFICER WORKING THE PILL LINE AND ALSO THE LT. e. OFF.  LT. ROSS*

STATE GRIEVANCE (Include documentation, name of any witnesses supporting your claim and date of incident. Attach additional pages if necessary.) / ESPECIFIQUE LA QUEJA (Incluya documentacion, nombre de cualquier testigo que certifique su queja y fecha del incidente. Agre... páginas adicionales si es necesario.)

*MY GRIEVANCE IS ON THE MEDICAL DEPARTMENT FOR THE NEGLIGENCE AND LACK OF CONCERN FOR MY MEDICAL NEEDS THAT HAS BE APPLIED TO ME BY FAILING TO MAINTAIN MY PHENOBARBITAL MEDICATION FO SEIZURES. ON 6-18-96 (P.M. PILL LINE) AND 6-19-96 (AM PILL LINE) I WAS TOLD THA THEY (MEDICAL DEPARTMENT) HAD RUN OUT OF MY PHENOBARBITAL MEDICATION AND I WOULD HAVE TO WAIT UNTIL IT WAS RE-ORDERED. I EXPLAINED TO THEM OF I HAD TO TAKE THIS MEDICATION AND THEY ANSWERED BY SAYING THAT I WOULD HAVE WAIT FOR IT TO COME IN. MY QUESTION IS, WHAT DO I SUPPOSE TO DO IN THE ME TIME? WHO WOULD BE TO BLAME IF I HAVE A SEIZURE AND HURT MYSELF SOME TYPE OF WAY? ALSO KNOWING HOW IMPORTANT THIS MEDICATION IS TO A EPILEPTIC PATIENT AND DOCTOR PRESCRIBED, HOW CAN A MEDICAL DEPARTMENT OF T KIND JUST LET SOMETHING LIKE THIS SLIP BY WITHOUT KNOWING NOR ATTEMPT, TO UNDERSTAND THE PREDICTAMENT OR UNSAFE SITUATION ONE IS BEING PLACED I*

ACTION REQUESTED / ACCIÓN SOLICITADA: *THIS IS A CLEAR FORM OF DELIBERATE INDIFFERENCE. THE REGIONAL DIRECTOR REVIEW THIS AND TAKE THE APPROPRIATE ACTI. THAT IS NECESSARY FOR A RESOLUT.*

Inmate's Signature / Firma Del Preso: *Baldemar Espinosa*   Date / Fecha: *6-19-96*

WARDEN'S Decision and Reason / Decision del GUARDIÁN y Razones:

```
This does not meet the criteria for an emergency grievance and will be
processed as a regular grievance.
Investigation revealed the major reason your medication was not readaly
available was in a large part due to your inconsistency in taking your
medication. This office would suggest that you take your prescribed medication
per the unit physicians orders. If you follow the directions of this office
and the doctors orders and still have problems receiving your medication,
notify this office immediately.
```

Warden's Signature / Firma Del Guardián: *Tony...*   Date / Fecha: *7-1-96*

**EXHIBIT A-1**

you are not satisfied with the Warden's Response you may appeal to the Regional Director through your Unit Grievance Coordinator (Se .verse side for further instructions.) / Si usted no está satisfecho con la Decisión del Guardián puede apelar al Director Regional por medio de Coordinador de Quejas de su Unidad (Vea al reverso donde hallará instrucciones adicionales.)

I-127 (Revised 1988)

Resident _____ on day of _____ was made aware of the appeal process.

80630

I -127 (Revised 1988) [BACK]                              STEP 1 / PASO 1

## INSTRUCTIONS FOR COMPLETING THE STEP 1 GRIEVANCE FORM

1. A informal resolution should be attempted prior to the filing of the Step 1 grievance.
2. An emergency grievance is one that if handled according to the regular time limits, would subject an inmate to a substantial risk of personal injury of other serious and irreparable harm. Check the appropriate box to identify your grievance.
3. Complete each section as briefly as possible, writing only in the space provided for inmate use.
4. Only one issue is to be presented on each form.
5. Submit the completed form to the Unit Grievance Coordinator within fifteen (15) days of the alleged incident. Do not write in the space provided for the Warden's determination.
6. If you are not satisfied with the Warden's determination, you may appeal to the Regional Director within five (5) days of the date of the signature of the Warden, via the Unit Grievance Coordinator. Submit your original Step 1 with the appeal.
7. If you wish to obtain assistance in completing the form or wish to obtain a copy of the Inmate Grievance Procedure, you may contact the Unit Grievance Coordinator.

## INSTRUCCIONES PARA LLENAR LA FORMA PARA QUEJAS DEL PASO 1

1. Deberá intentarse llegar a una resolución infromal antes de someter la quejas en el paso
2. Se considera queja de emergencia una queja que de ser tratada de acuerdo con los márgenes de tiempo normales, pondria al preso en un riesgo considerable de recibir daños serios e irreparables. Marque el lugar apropiado para decir si su queja es de este tipo.
3. Llene cada sección tan brevemente como sea posible, y secriba soamente en los espacios provistos para que escriban los presos.
4. Solamente se puede presentar un asunto en cada forma.
5. Presente la forma ya llena al Coordinador de Quejas de la Unidad dentro de un palzo de quince (15) días a partir de la fecha del incidente. No escriba en el espacio provisto para que el Guardián escriba su determinación.
6. si no está satisfecho con la determinación del Guardián, puede apelar al Director Regional en un plazo de cinco (5) días a partir de la fecha en que la firmo el Guardián, por medio del Coordinador de Quejas de la Unidad.
7. Si desea que lo ayuden a llenar la forma o desea obtener una copia de Procediminento de Quejas de los Presos, puede ponerse en contacto con el Coordinador de los Quejas de la Unida.

S0630

# TEXAS DEPARTMENT OF CORRECTIONS
# INMATE GRIEVANCE FORM
## FORMA PARA QUEJAS DE LOS PRESO

| | STEP 1 |
|---|---|
| | PASO 1 |

Inmate Name: **BALDEMAR ESPINOSA, J.R.**
Nombre Del Preso

Inmates TDC Number: **# 576926   JUNE 26-1996**
Numero Del TDC Preso

Unit: **W.C.C. UNIT**
Inida

Housing Assignment: **Adm. Seg. #19**
Vivienda Asignada

Check if an emergency grievance: ☐yes(si) ☐no(no)
que si es una queja de emergencia

I object to the posting of issues presented in this grievance:   yes(si) ☐   no(no)
No deseo que se publiqen los asunto tratados en esta queja

### OFFICE USE ONLY / Para Uso De la Oficina Solamente

Unit Number: **0435**

Code: **6.1.0**

Date Received: **JUN 26 1996**

UGC Signature: _____

Specify how and when informal resolution was attempted / Especifique como y cuando trató de hallar una solucion infomal:

ON JUNE 25 I ASKED THE OFFICER ON DUTY AND HE STATED THAT MY MEDICATION WOULD BE BROUGHT TO ME. ALSO I INFORMED THE SGT. ON DUTY AND HE REMINDED THIS OFFICER ABOUT MY MEDICATION.

**STATE GRIEVANCE** (Include documentation, name of any witnesses supporting your claim and date of incident. Attach additional pages if necessary.) / ESPECIFIQUE LA QUEJA (Incluya documentación, nombre de cualquier testigo que certifique su queja y fecha del incidente. Agregue páginas adicionales si es necesario.)

ON JUNE 25th I WAS PLACED IN PRE-HEARING DETENTION (AD. SEG) AND WHILE THERE I REMINDED THE OFFICER ON DUTY OF MY MEDICATION. THE NURSE CAME AND EXAMINED ME & I BROUGHT IT TO HER ATTENTION. ON THE EVENING OF JUNE 25th I WAS NOT GIVEN MY MEDICATION (PHENOBARBITOL AND DILANTIN) AND AFTER GOING THROUGH THESE PROPER CHANNELS I WOULD LIKE TO KNOW WHY I STILL DIDN'T RECEIVE THEM. THESE MEDICATIONS ARE DOCTOR PRESCRIBED FOR MY SEIZURES AND ARE SUPPOSED TO BE GIVEN ON THE DATES AND TIMES PRESCRIBED AND SHOULD NOT BE INTERFERED WITH!!

**ACTION REQUESTED / ACCIÓN SOLICITADA:** THAT THE REGIONAL DIRECTOR LOOK INTO THIS MATTER AND TAKE THE ACTION NECESSARY TO ELIMINATE THIS PROBLEM!!

Baldemar Espinosa   6/26/96
Inmate's Signature / Firma Del Preso      Date / Fecha

**WARDEN'S Decision and Reason / Decision del GUARDIÁN y Razones:**

Due to the seriousness of your complaint this office did a through investigation into the procedures for providing medication and medical attention to inmates assigned to segregation. This investigation revealed that your complaint was duly noted and Health service administrator Ms. Collins was immediately made aware of your situation. The medical department advises this office that new procedures for insuring inmates assigned to segregation receive there medication as prescribed has been implemented.

Tony Pierce   7-1-96
Warden's Signature / Firma Del Guardián      Date / Fecha

## EXHIBIT
## A-2

If you are not satisfied with the Warden's Response you may appeal to the Regional Director through your Unit Grievance Coordinator (See reverse side for further instructions.) / Si usted no está satisfecho con la Decisión del Guardián puede apelar al Director Regional por medio del Coordinador de Quejas de su Unidad

(Vea el reverso donde hallará instrucciones adicionales.)
I - 127 (Revised 1988)

Resident _____   on day of _____ was
made aware of the appeal process.

E063

I -127 (Revised 1988) [BACK]

<div style="border:1px solid">STEP 1 / PASO 1</div>

## INSTRUCTIONS FOR COMPLETING THE STEP 1 GRIEVANCE FORM

1. A informal resolution should be attempted prior to the filing of the Step 1 grievance.
2. An emergency grievance is one that if handled according to the regular time limits, would subject an inmate to a substantial risk of personal injury of other serious and irreparable harm. Check the appropriate box to identify your grievance.
3. Complete each section as briefly as possible, writing only in the space provided for inmate use.
4. Only one issue is to be presented on each form.
5. Submit the completed form to the Unit Grievance Coordinator within fifteen (15) days of the alleged incident. Do not write in the space provided for the Warden's determination.
6. If you are not satisfied with the Warden's determination, you may appeal to the Regional Director within five (5) days of the date of the signature of the Warden, via the Unit Grievance Coordinator. Submit your original Step 1 with the appeal.
7. If you wish to obtain assistance in completing the form or wish to obtain a copy of the Inmate Grievance Procedure, you may contact the Unit Grievance Coordinator.

## INSTRUCCIONES PARA LLENAR LA FORMA PARA QUEJAS DEL PASO 1

1. Deberá intentarse llegar a una resolución infromal antes de someter la quejas en el paso
2. Se considera queja de emergencia una queja que de ser tratada de acuerdo con los márgenes de tiempo normales, pondria al preso en un riesgo considerable de recibir daños serios e irreparables. Marque el lugar apropiado para decir si su queja es de este tipo.
3. Llene cada sección tan brevemente como sea posible, y secriba soamente en los espacios provistos para que escriban los presos.
4. Solamente se puede presentar un asunto en cada forma.
5. Presente la forma ya llena al Coordinador de Quejas de la Unidad dentro de un palzo de quince (15) días a partir de la fecha del incidente. No escriba en el espacio provisto para que el Guardián escriba su determinación.
6. si no está satisfecho con la determinación del Guardián, puede apelar al Director Regional en un plazo de cinco (5) días a partir de la fecha en que la firmo el Guardián, por medio del Coordinador de Quejas de la Unidad.
7. Si desea que lo ayuden a llenar la forma o desea obtener una copia de Procediminento de Quejas de los Presos, puede ponerse en contacto con el Coordinador de los Quejas de la Unida.

S063G

CHzPDF - www.fasiio.com

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
INSTITUTIONAL DIVISION
# HEALTH SUMMARY FOR CLASSIFICATION

UNIT NAME. TDCJ   576926  PULL  C24   HT 64½
INMATE NAME. ESPINOSA. BALDEMAR JR.   WT 159
RACE H  SEX M   DOB C6/C8/68
DATE REC'D         12/19/95
DATE EXAMINED      12/19/95

| P | U | L | H | E | S | S |
|---|---|---|---|---|---|---|
| 2 | 1 | 9 | 1 | — | — | — |
| G | A | C | A | — | — | |
| P | P | P | P | — | — | |

IF RESTRICTIONS ARE TEMPORARY, CHECK ONE: DURATION: A.___14 Days  B.___30 Days   C.___60 Days   D.___90 Days

**I. UNIT OF ASSIGNMENT (CHECK ONE)**
- ✓ A. NO RESTRICTION
- ___ B. REGIONAL MEDICAL FACILITY
- ___ C. EXTENDED CARE FACILITY
- ___ D. PSYCHIATRIC CARE FACILITY
- ___ E. BARRIER-FREE FACILITY
- ___ F. SINGLE LEVEL FACILITY
- SUITABLE FOR TRUSTEE CAMP ASSIGNMENT?___YES ___NO
- SUITABLE FOR SAIP FACILITY?         ___YES ___NO

**II. HOUSING ASSIGNMENT**
A. BASIC HOUSING (CHECK ONE)
- ✓ 1. NO RESTRICTION
- ___ 2. SINGLE CELL ONLY
- ___ 3. DOUBLE CELL ONLY
- ___ 4. SPECIAL HOUSING (HOUSING WITH PATIENT WITH LIKE MEDICAL CONDITION)
- ___ 5. CELL BLOCK ONLY

B. BUNK ASSIGNMENT (CHECK ONE)
- ___ 1. NO RESTRICTION
- ✓ 2. LOWER ONLY

C. ROW ASSIGNMENT (CHECK ONE)
- ✓ 1. NO RESTRICTION
- ___ 2. GROUND FLOOR ONLY

**III. WORK ASSIGNMENT/RESTRICTIONS (CHECK ALL THAT APPLY)**
- ___ 1. MEDICALLY UNASSIGNED
- ___ 2. PSYCHIATRICALLY UNASSIGNED
- ___ 3. SEDENTARY WORK ONLY
- ___ 4. FOUR HOUR WORK RESTRICTION
- ___ 5. FOUR HOUR LIMITED WORK RESTRICTION
- ___ 6. EXCUSE FROM SCHOOL
- ___ 7. LIMITED STANDING
- ___ 8. NO WALKING > ___ YARDS
- ___ 9. NO LIFTING > ___ LBS.
- ___ 10. NO BENDING AT WAIST
- ___ 11. NO SQUATTING
- ✓ 12. NO CLIMBING
- ___ 13. LIMITED SITTING
- ___ 14. NO REACHING OVER SHOULDERS
- ___ 15. NO FOOD SERVICE WORK
- ___ 16. NO REPETITIVE USE OF HANDS
- ___ 17. NO WALKING ON WET UNEVEN SURFACES
- ___ 18. DO NOT ASSIGN TO MEDICAL
- ___ 19. NO WORK IN DIRECT SUNLIGHT
- ___ 20. NO TEMPERATURE EXTREMES
- ___ 21. NO HUMIDITY EXTREMES
- ___ 22. NO EXPOSURE TO ENVIRONMENTAL POLLUTANTS
- ___ 23. NO WORK WITH CHEMICALS OR IRRITANTS
- ___ 24. NO WORK REQUIRING SAFETY BOOTS
- ___ 25. NO WORK AROUND MACHINES WITH MOVING PARTS
- ___ 26. NO WORK EXPOSURE TO LOUD NOISES
- ___ 27. NO WORK REQUIRING COMPLEX INSTRUCTIONS

**IV. DISCIPLINARY PROCESS (CHECK ONE)**
- ✓ A. NO RESTRICTIONS
- ___ B. CONSULT REPRESENTATIVE OF MENTAL HEALTH DEPARTMENT BEFORE TAKING DISCIPLINARY ACTION

**V. TRANSPORTATION RESTRICTIONS: (CHECK ONE)**
- ✓ A. NO RESTRICTION
- ___ B. EMS AMBULANCE
- ___ C. WHEELCHAIR VAN
- ___ D. VAN (SOUTHERN REGION ONLY)

EXHIBIT A-3

R. D. GAMBLE, MD 12/18/95        R. D. Gamble MD
PRINTED NAME AND TITLE OF REVIEWER   DATE        SIGNATURE OF REVIEWER

HSM - 18 (REV. 9/92)

Case 1:96-cv-00160   Document 33   Filed in TXSD on 04/07/2000   Page 35 of 47



EXHIBIT
A·4

TEXAS DEPARTMENT OF CRIMINAL JUSTICE
HEALTH SUMMARY FOR CLASSIFICATION

NAME: ESPINOSA,BALDEMAR JR.
TDCJ#: 576926    SID#: 03771484
UNIT: NH        HOUSING: W7C-002
JOB: UNASSIGNED-PROCESSING

DOB: 06/08/1968
WGT: 159 LBS
HGT: 5'03"

```
P U L H E S
-------------
|3|1|3|1|1|1|
|G|A|C|A|A|A|
|P| |P| | | |
-------------
```

I.  UNIT OF ASSIGNMENT (CHECK ONE)
   X  A. NO RESTRICTION
   __ B. REGIONAL MEDICAL FACILITY
   __ C. EXTENDED CARE FACILITY
   __ D. PSYCHIATRIC CARE FACILITY

   __ E. BARRIER-FREE FACILITY
   __ F. SINGLE LEVEL FACILITY
   SUITABLE FOR TRUSTEE CAMP ASSIGNMENT?X YES__NO
   SUITABLE FOR SAIP FACILITY?        X YES__NO

II. HOUSING ASSIGNMENT
A. BASIC HOUSING (CHECK ONE)
   X  1. NO RESTRICTION
   __ 2. SINGLE CELL ONLY
   __ 3. DOUBLE CELL ONLY
   __ 4. SPECIAL HOUSING (HOUSING WITH
         PATIENT WITH LIKE MEDICAL CONDITION
   __ 5. CELL BLOCK ONLY

B. BUNK ASSIGNMENT (CHECK ONE)
   __ 1. NO RESTRICTION
   00 2. LOWER ONLY

C. ROW ASSIGNMENT (CHECK ONE)
   X  1. NO RESTRICTION
   __ 2. GROUND FLOOR ONLY

III.WORK ASSIGNMENT/RESTRICTIONS (CHECK ALL THAT APPLY)
   __  1. MEDICALLY UNASSIGNED
   __  2. PSYCHIATRICALLY UNASSIGNED
   __  3. SEDENTARY WORK ONLY
   __  4. FOUR HOUR WORK RESTRICTION
   __  5. FOUR HOUR LIMITED WORK RESTRICTION
   __  6. EXCUSE FROM SCHOOL
   __  7. LIMITED STANDING
   __  8. NO WALKING ) ____ YARDS
   __  9. NO LIFTING ) ____ LBS.
   __ 10. NO BENDING AT WAIST
   __ 11. NO SQUATTING
   00 12. NO CLIMBING
   __ 13. LIMITED SITTING
   __ 14. NO REACHING OVER SHOULDER

   __ 15. NO FOOD SERVICE
   __ 16. NO REPETITIVE USE OF HANDS
   __ 17. NO WALKING ON WET UNEVEN SURFACES
   __ 18. DO NOT ASSIGN TO MEDICAL
   __ 19. NO WORK IN DIRECT SUNLIGHT
   __ 20. NO TEMPERATURE EXTREMES
   __ 21. NO HUMIDITY EXTREMES
   __ 22. NO EXPOSURE TO ENVIRONMENTAL POLLUTANTS
   __ 23. NO WORK WITH CHEMICALS OR IRRITANTS
   __ 24. NO WORK REQUIRING SAFETY BOOTS
   00 25. NO WORK AROUND MACHINES WITH MOVING PARTS
   __ 26. NO WORK EXPOSURE TO LOUD NOISES
   __ 27. NO WORK REQUIRING COMPLEX INSTRUCTIONS

IV. DISCIPLINARY PROCESS (CHECK ONE)
   X  A. NO RESTRICTIONS
   __ B. CONSULT REPRESENTATIVE OF MENTAL HEALTH DEPARTMENT BEFORE TAKING DISCIPLINARY ACTION
   __ C. CONSULT REPRESENTATIVE OF MEDICAL DEPARTMENT BEFORE TAKING DISCIPLINARY ACTION

V  INDIVIDUALIZED TREATMENT PLAN (CHECK ALL THAT APPLY)
   X  A. NO RESTRICTION              __ C. PSYCH REPRESENTATIVE REQUIRED
   __ B. MEDICAL REPRESENTATIVE REQUIRED

VI. TRANSPORTATION RESTRICTIONS (CHECK ONE)
   X  A. NO RESTRICTION              __ C. WHEELCHAIR VAN
   __ B. EMS AMBULANCE               __ D. VAN (SOUTHERN REGION ONLY)

SJHF5JU           (2)          12/12/1995

EXHIBIT
A.5

Case 1:96-cv-00160   Document 33   Filed in TXSD on 04/07/2000   Page 37 of 47

```
CSHS1802          T   .J. - INSTITUTIONAL DIVISI        DATE: 06/03/96
              HEAL  MMARY FOR CLASSIFICATI(    3TEM   TIME: 14:54:08
                            INQUIRY
TDCJ-ID #: 576926     SID #: 03771484        P   U   L   H   E   S
NAME: ESPINOSA,BALDEMAR JR.                 ------------------------
HT 5'03"   WT 159                          | 3 | 1 | 3 | 1 | 1 | 1 |
DOB: 06 08 1968                            |---|---|---|---|---|---|
UNIT: NH      HOUSING: B6-040              | G | A | C | A | A | A |
JOB: B2 DORM JANITOR 3RD                   |---|---|---|---|---|---|
                                           | P |   | P |   |   |   |
RESTRICTIONS                                ------------------------
UNIT: NO RESTRICTION            TRUSTY CAMP SUITABLE: Y
HOUSING: NO RESTRICTION
BUNK: LOWER ONLY                ROW: NO RESTRICTIONS
WORK: W12 W25
DISCIPLINARY PROCESS: NO RESTRICTION

INDIVIDUALIZED TREATMENT PLAN: NO RESTRICTIONS

TRANSPORTATION RESTRICTIONS: NO RESTRICTION
REVISED BY: SIMPSON                 REVISED DATE: 12 18 1995
PF1 -HELP  PF3 -MENU  PF4 -ADDITIONAL INFO  PF7 -UP  PF8 -DOWN
ENTER NEXT REQUEST: _____
```


EXHIBIT A-6

PLACEMENT/REMOVAL
FROM SEGREGATION/MEDICAL

Date: 7--5--96

TO:  Mailroom
     Medical
     (Inmate Records)
     Security
     Classification
     Countroom

The following inmate _Bot_____,
# _____, was placed in Administration
Segregation / Medical Infirmary, Cell / Bed # _____.


The following inmate _Baldemar, Espinosa_____,
# _576426_____, was removed from Administration
Segregation (Medical Infirmary) and was placed in Housing _____,
Dorm _____, Bunk _Lower_.  He has also been given a job in
_____ from _____ to _____.


_Place in lower bunk._


**EXHIBIT**
A-7

# Inter-Office Communications

FROM: <u>Medical Department</u>

DATE: <u>7-5-96</u>

SUBJECT: <u>Espinosa, Baldemar</u>

TDC# <u>5-76926</u>

TO:

| | | | |
|---|---|---|---|
| _____ | Warden | _____ | Dietary/Kitchen |
| ✗ | Classification | _____ | Maintenance |
| _____ | Central Control | _____ | Payroll/Bookkeeping |
| _____ | West Control Picket | _____ | Training Officer |
| _____ | East Control Picket | _____ | Administration Files |
| _____ | Security Office | _____ | Education/Counselor |
| _____ | Gym | _____ | Commissary |
| _____ | Supply | _____ | Inmate's Copy |
| _____ | Other | _____ | Other |

COMMENTS: _____

Lower bunk only

F Cl____ RN

EXHIBIT
A - 8

#4486



## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/ 7/17/
FECHA DE SOLICITUD

(Please check one)/
(Por favor marque uno)

✓ Medical Complaint/
Queja Médica

____ Dental Complaint/
Queja Dental

**Print:/** BALDEMAR ESPINOZA JR. #576926 ADM.SEG.#23
Use Letra de Molde

| Inmate's Name/ Nombre del Preso | Number/ Número del Preso | Housing Location/ Sitio de Vivienda | Job Assignment/ Asignación de Trabajo | Duty Hours/ Horas de Trabajo |

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios días para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha asistencia en español.

PROBLEM/QUEJA: I WOULD LIKE TO REQUEST MEDICAL ATTENTION FOR MY BACK PAIN. I HAVE TAKEN NUMEROUS MEDICATIONS BUT NOTHING HAS HELPED. ALSO I AM STILL HAVING MY HEADACHES AND REQUEST MEDICAL ATTENTION.

Baldemar Espinoza Jr. #576926
Inmate's Signature/Firma del Preso

_____ **DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA** _____

Date Received ___7-17-96___ (Stamp Date)

Date Reviewed: _____ ____Written Response (see below) ____Seen in Medical

ACTION TAKEN Placed on sick call list

____Placed on sick call list. Date of Appointment_____

____Placed on Dental list. Date of Assessment: _____

____Other (Explain): _____

H Clark
Medical Staff Signature

WCC M-120
74475 (1/1/92)

WHITE - CHART      YELLOW - INMATE

EXHIBIT
A·9

1/675



## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/  7/23/96        (Please check one)/        V   Medical Complaint/        ___ Dental Complaint/
FECHA DE SOLICITUD                (Por favor marque uno)          Queja Médica              Queja Dental

**Print:/** BALDEMAR ESPINOSA J.R.  576921      SEG. # 22
Use Letra de Molde   Inmate's Name/      Number/        Housing Location/   Job Assignment/   Duty Hours/
                     Nombre del Preso    Número del Preso  Sitio de vivienda  Asignación de Trabajo  Horas de Trabajo

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios días para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha asistencia en español.

PROBLEM/QUEJA: I WOULD LIKE TO REQUEST TO SPEAK TO DR. C. (PSYCIATRIST)
ABOUT PUTTING ME ON THE OTHER MEDICATION INSTEAD OF ELAVIL. I THINK
I SAW HIM ABOUT 2 WEEKS AGO AND HE SAID HE WOULD SEE ME AGAIN IN
2 WEEKS. HE TOLD ME TO TRY THE ELAVIL AND IF NOT HE WOULD PUT ME
ON SUPERNOM OR SOMETHING LIKE THAT. THAT IS SUPPOSE TO BE EPILEPTIC
MEDICATION ALSO. I WAS ALSO SUPPOSE TO HAVE SOME TEST DONE BY THE UNIT DOCTOR
          Baldemar Espinosa Jr. #576926   7/23/96
                     Inmate's Signature/Firma del Preso

_____ **DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA** _____

Date Received _____ 7/5 6/ _____ (Stamp Date)

Date Reviewed: _____ 7/24 _____    ___Written Response (see below)   ___Seen in Medical

ACTION TAKEN  You'll be notified of your appt time.

_____

_____

_____

_____

✓ ___Placed on sick call list.   Date of Appointment_____

___Placed on Dental list.   Date of Assessment: _____

___Other (Explain): _____

                    Medical Staff Signature

**EXHIBIT**
**A·10**



8/26/96
B.E.

## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/ 8/26/96    (Please check one)/    ✓ Medical Complaint/    ___ Dental Complaint/
FECHA DE SOLICITUD    (Por favor marque uno)    Queja Médica    Queja Dental

**Print/** BALDEMAR ESPINOSA    #576926   IIIC #36   NSNG JANITOR 6
Use Letra de Molde    Inmate's Name/    Number/    Housing Location/    Job Assignment/    Duty Hours/
    Nombre del Preso    Número del Preso    Sitio de Vivienda    Asignación de Trabajo    Horas de Trabajo

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios días para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha asistencia en español.

PROBLEM/QUEJA: I WOULD LIKE TO SEE THE DOCTOR ABOUT MY RIGHT ARM THAT IS BOTHERING ME AND ALSO I AM STILL HAVING BACK PAIN AND HEADACHES. I ALSO WOULD LIKE TO REQUEST A SPECIALIST EXAM. THANK YOU.

Baldemar Espinosa Jr. 8/26/96
Inmate's Signature/Firma del Preso

_____ DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA _____

Date Received    8/26/96    (Stamp Date)

Date Reviewed:    8/26/96    ✓ Written Response (see below)    ___ Seen in Medical

**ACTION TAKEN** Placed on Sick call list

✓ Placed on sick call list.  Date of Appointment  will be not fixed

___ Placed on Dental list.  Date of Assessment: _____

___ Other (Explain): _____

Medical Staff Signature

WCC  M-120
74475 (1/1/92)    WHITE – CHART    YELLOW – INMATE

EXHIBIT
A·11

10/02
September 2, 1996
2:30 pm



**WACKENHUT**

## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/ _9/2/96_
FECHA DE SOLICITUD

(Please check one)/    ✓ Medical Complaint/ ____ Dental Complaint/
(Por favor marque uno)      Queja Médica         Queja Dental

**Print:/** _BALDEMAR ESPINOSA, JR. #576926  HVC #36  HSng. JANITOR 6 AM-2 PM_
Use Letra de Molde

| Inmate's Name/ | Number/ | Housing Location/ | Job Assignment/ | Duty Hours/ |
| Nombre del Preso | Número del Preso | Sitio de Vivienda | Asignación de Trabajo | Horas de Trabajo |

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios dias para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha assistencia en español.

PROBLEM/QUEJA: _I would like to request medical attention for my right arm & back pain and also my muscles. The medicines I am presently taking dont seem to help. Also often times in the mornings after breakfast I begin to start feeling sick and it makes me lay down until it passes. These feelings consist of dizziness, dry mouth, weakness and a headache_

_Baldemar Espinosa_                     _September 2, 1996  2:30 pm_
Inmate's Signature/Firma del Preso

_____ **DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA** _____

Date Received _9/2/96_ (Stamp Date)

Date Reviewed: _____ _____ Written Response (see below) _____ Seen in Medical

ACTION TAKEN _You have been placed in nursing sick call list and will be advised of date & time for appointment._

_____

_____

_____

✓ Placed on sick call list.  Date of Appointment _____

____ Placed on Dental list.  Date of Assessment: _____

____ Other (Expla:n): _____

**EXHIBIT**
**A.12**

_(signature)_
Medical Staff Signature

WCC  M-120
74475 (1/1/92)              WHITE - CHART          YELLOW - INMATE



## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/ _____   (Please check)
FECHA DE SOLICITUD                  (Por favor)      X Medical Complaint/      ___ Dental Complaint/
                                                       Queja Médica              Queja Dental

**Print:/** _____
Use Letra de Molde   Inmate's Name/        Number/         Housing Location/   Job Assignment/     Duty Hours/
                     Nombre del Preso      Número del Preso Sitio de Vivienda  Asignación de Trabajo Horas de Trabajo

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios días para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha asistencia en español.

PROBLEM/QUEJA: _____
_____
_____
_____
_____
_____

_____
Inmate's Signature/Firma del Preso

_____ **DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA** _____

Date Received _____ (Stamp Date)

Date Reviewed: _____  ___ Written Response (see below)  ___ Seen in Medical

*ACTION TAKEN* _____
_____
_____
_____

___ Placed on sick call list.  Date of Appointment _____

___ Placed on Dental list.  Date of Assessment. _____

___ Other (Explain): _____

_____

WCC  M-120               Medical Staff Signature
74475 (1/1/92)                              WHITE - CHART        YELLOW - INMATE



EXHIBIT
A·13





1301

10/7/96

## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/ __10/7/96__   (Please check one)/   __X__ Medical Complaint/   ____ Dental Complaint/
FECHA DE SOLICITUD                (Por favor marque uno)       Queja Médica            Queja Dental

Print/ __BALDEMAR ESPINOSA, J.R.   # 576926   HIC#36   HSNG. JANITOR  6ᴬᴹ-2ᵖᵐ__
Use Letra de Molde
| Inmate's Name/ | Number/ | Housing Location/ | Job Assignment/ | Duty Hours/ |
| Nombre del Preso | Número del Preso | Sitio de Vivienda | Asignación de Trabajo | Horas de Trabajo |

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios días para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha assistencia en español.

PROBLEM/QUEJA: __I WOULD LIKE TO SEE THE DOCTOR CONCERNING__
__MY ELAVIL MEDICATION. ALSO MY RIGHT ARM IS STIL__
__BOTHERING ME.__

__Baldemar Espinosa Jr.__          __10/7/96__
Inmate's Signature/Firma del Preso

_____ DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA_____

Date Received __10/7/96__ (Stamp Date)

Date Reviewed: _____   ____Written Response (see below)   ____Seen in Medical

ACTION TAKEN _____
__You will see The Dr. 10/18/96__

____Placed on sick call list.   Date of Appointment_____

____Placed on Dental list.   Date of Assessment: _____

____Other (Expla..n): _____

__F._____ RN__
Medical Staff Signature

WCC  M-120
74475 (1/1/92)                    WHITE ~ CHART        YELLOW ~ INMATE



EXHIBIT
A. 14




# WACKENHUT

## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

DATE OF REQUEST/ *10/14/96*   (Please check one)/
FECHA DE SOLICITUD   (Por favor marque uno)   ✗ Medical Complaint/ Queja Médica   ___ Dental Complaint/ Queja Dental

Print:/ *BALDEMAR ESPINOZA JR  #58920*
Use Letra de Molde   Inmate's Name/ Nombre del Preso   Number/ Número del Preso   Housing Location/ Sitio de Vivienda   Job Assignment/ Asignación de Trabajo   Duty Hours/ Horas de Trabajo

Briefly state the reason for your request; you will receive a response to your request. Please allow several days for your request to be submitted, answered and returned. A copy of your request will be filed in your records.

Explique brevemente la razón de su solicitud. Permita varios dias para que su solicitud sea procesada. Una copia de su solicitud será archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha assistencia en español.

PROBLEM/QUEJA: _____

_____

_____

_____

_____

_____ *10/14/96*
Inmate's Signature/Firma del Preso

_____ DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA _____

Date Received _____ (Stamp Date)

Date Reviewed: _____   ___ Written Response (see below)   ___ Seen in Medical

*ACTION TAKEN* _____

_____

_____

_____

_____

___ Placed on sick call list.  Date of Appointment _____

___ Placed on Dental list.  Date of Assessment. _____

___ Other (Explain): _____

_____
Medical Staff Signature

WCC  M-120
74475 (1/1/92)

WHITE – CHART     YELLOW – INMATE


EXHIBIT
A-15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BALDEMAR ESPINOSA, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| WACKENHUT INC. CORP., WARDEN | § | B - 96 - 160 |
| TONY PEREZ, ASST. WARDEN | § | |
| RODRIGUES, ASST. WARDEN | § | |
| MARMALEJO, MEDICAL DEPARTMENT | § | |
| OFFICIALS and UNIT CLASSIFICATIONS | § | |
| OFFICIALS | § | |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS
## AND MOTION FOR SUMMARY JUDGMENT

On the _____ day of _____, 2000, this cause came on for hearing

*Defendants' Motion to Dismiss and/or Motion for Summary Judgment.*

After hearing the argument of counsel thereon, the Court is of the opinion that

Defendants' Motion to Dismiss and Motion for Summary Judgment should be DENIED;

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendants' Motion

to Dismiss and Motion for Summary Judgment are DENIED in their entirety.

Signed on this the _____ day of _____, 2000.

_____
U.S. MAGISTRATE JUDGE